Canfield *v*. Sheketoff.

---

THOMAS E. CANFIELD *vs.* MORRIS S. SHEKETOFF ET ALS.

First Judicial District, Hartford, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, JS.

Although the action of a trial judge in setting aside a verdict is entitled to great weight, the conclusion of the jury, when based upon conflicting evidence, must stand unless it is such that reasoning minds could not reasonably have reached it.

It is the exclusive function of the jury to determine the weight of the evidence and the credibility of the witnesses.

In the absence of an express contract, a broker may become entitled to compensation for his services under either of two conditions: first, where the conduct of the principal is such that the broker, acting fairly, entertains the honest belief that a lawful request has been made to him by the principal for his services and he, acting upon that request, actually renders such services; and second, where the broker, without a request from the principal, renders services under circumstances indicating that he expects to be paid therefor, and the principal, knowing such circumstances, avails himself of the benefit of the services.

Canfield *v.* Sheketoff.

In the present case, the jury might reasonably have found from the evidence that, after the owners of an apartment house, then in process of construction, had employed the plaintiff, a real-estate broker, to procure a mortgage loan for them, and after he had obtained a promise from certain bankers that the loan would be made, the owners became financially embarrassed before the money was advanced and were unable to complete the building, whereupon the defendants, creditors of the owners, purchased the the property at a foreclosure sale with full knowledge of the previous efforts of the plaintiff to secure the loan and upon the understanding that he would attempt, if possible, to prevail upon the bankers to increase the amount of the proposed loan, or, at least, to renew their promise for the original amount, in which latter attempt the plaintiff succeeded, with the result that the loan was subsequently made to and accepted by the defendants upon the same terms which the plaintiff had, in the first instance, arranged for the previous owners. The jury concluded that the plaintiff was entitled to a commission and rendered a verdict in his favor which the trial court set aside on the ground that plaintiff's services had been rendered, not to the defendants, but to the previous owners. *Held* that the trial court erred.

Argued January 5th—decided February 23d, 1926.

ACTION to recover for services in procuring a loan upon real estate for the defendants, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* verdict for the plaintiff for $2,464, which the court, upon defendants' motion, set aside, and the plaintiff appealed. *Error; judgment directed for the plaintiff upon the verdict.*

*William S. Hyde,* for the appellant (plaintiff).

*Edward J. Daly,* with whom was *Herbert Spencer,* for the appellees (defendants).

HAINES, J. This case presents the question whether the action of the trial court, in setting aside the verdict of the jury, was justified. Included in the record is a transcript of the entire evidence, a study of which shows that the conclusion of the jury was reached upon testimony which, at many points. was conflicting.

The action of the trial court in setting aside the verdict of the jury is entitled to great weight. *Schulte, Inc.* v. *Hewitt Grocery Co.*, 101 Conn. 750, 751, 125 Atl. 365. It is also true that where the conclusion of a jury is reached upon conflicting evidence, that conclusion should stand unless reasoning minds could not reasonably have reached that conclusion. *Skaling* v. *Sheedy*, 101 Conn. 545, 548, 126 Atl. 721.

A verdict is not to be upheld or set aside by weighing the evidence and determining the credibility of witnesses, for this is the exclusive function of the jurymen themselves, and if they acted reasonably, their conclusion upon these points is final. It is not for us therefore to say what portions of the evidence should or should not have been believed by the jury in this case, but we are bound rather to decide whether the verdict was sound upon any reasonable and fair interpretation of the evidence.

The following facts are either undisputed or could reasonably have been found by the jury as established: An apartment house was in course of construction at Hartford by the owners, Parisi and Sleeper. They applied to the plaintiff, Canfield, a real-esate broker, for his services in procuring for them a loan to be secured by first mortgage upon the property. He obtained for them a promise from Lomas & Nettleton, real-estate bankers, of $110,000, but before the building was finished the owners became so badly involved financially that they were unable to complete the building. The construction work came to a standstill and the defendants and other creditors became apprehensive about the payment of their claims. Many meetings of the creditors were held and plans discussed, for assisting the owners to complete the work, but all attempts failed. Some of the creditors dropped out of the negotiations, but the defendants reached an agree-

ment among themselves, the day before the property was sold at auction under foreclosure proceedings, that one Marcus should, under certain conditions as to price, bid in the property for them, which he did March 30th, 1923. The price paid was $163,000, which was supplied by the defendants. Before reaching their agreement to take over the property, all the defendants were aware of the promise of $110,000 procured by the plaintiff, and held by him at their disposal. Before the auction Sheketoff had been to the plaintiff on a number of occasions to see if he and his associates could be assured of this money if they decided to take over the property, and he and the plaintiff had once or twice visited the property together during these conferences.

The plaintiff, in behalf of the defendants, again took up the matter with Lomas & Nettleton and obtained an assurance that the money which had been promised for Parisi and Sleeper, would be loaned to the defendants with mortgage upon this property. Sheketoff also asked the plaintiff to endeavor to obtain an increase for them in the amount of the loan, but the plaintiff did not succeed in this. Sheketoff testified that at this time he knew the plaintiff was "working on this loan," and that he himself also asked Lomas if the amount of the proposed loan could not be increased, but it was refused. Sheketoff and some of his associates went to Rockville, New York, and other places, and to at least one person in Hartford, in a fruitless effort to obtain a larger sum. Then they turned to the $110,000, the promise of which had been secured from Lomas & Nettleton by the plaintiff for the defendants after the failure of Parisi and Sleeper to take the money. The defendants, after seeking it in vain in other directions, eventually accepted this money, and the mortgage was placed on the property

then owned by the defendants on the exact terms which had been arranged by the plaintiff. These are the outstanding facts which could reasonably have been found by the jury if they gave credit to various witnesses.

Throughout the proceedings, the defendant Sheketoff, and at some points, the defendants Erickson and Viens, took an active part in making certain, through the plaintiff, that they could get this money from Lomas & Nettleton if they wanted it, and it is clear that the jury must have believed that these men, in the final steps at least, were acting for all five of the defendants, and this was a reasonable conclusion from the evidence. Viens testified as follows at one point: "Q. The five of you decided to use Lomas & Nettleton loan for $110,000? A. Eventually. Q. And you knew that loan had been promised on the same property prior to that time? A. Yes. Q. And you took it with full knowledge of the fact that it had been arranged before you five decided to take it over on March 30th; that's true, isn't it? A. That is true."

Incidentally it also appears that Sheketoff, who acted for the American Cement Company as a creditor, in one of the interviews with the plaintiff before these five defendants finally decided to take over the property, asked the plaintiff to try to get the amount increased to $125,000, and at that interview suggested to the plaintiff that he would thus receive more commission than if he only got the $110,000 for them. It was also testified that Sheketoff, discussing the plaintiff's claim for compensation, told a representative of Lomas & Nettleton after the property had been taken over, that Canfield was entitled to something for procuring their loan, but he would not consent to pay him two per cent. The plaintiff also testified that on the day the loan was consummated he spoke to Sheketoff

about his compensation and the latter told him "that one party had not come through with the agreement; somebody had dropped out, and he had got to take it up with the remaining ones before it was paid." All these matters were before the jury in the evidence, and they could reasonably have found them to be established facts.

The question therefore is whether the law upon such a state of facts is so that the plaintiff was entitled to compensation. Both the trial court and counsel recognized the rule which was stated in *Weinhouse* v. *Cronin*, 68 Conn. 250, 36 Atl. 45. In that case we detailed two states of facts, either of which entitled a broker to compensation: (1) If the conduct of the defendant was such that the plaintiff, acting fairly, had the honest belief that a lawful request had been made to him by the defendant for his services, and the plaintiff, acting upon that request, did render such services, or (2) if the plaintiff, without a request from the defendant, rendered services under circumstances indicating that he expected to be paid therefor, and the defendant, knowing of those services, availed himself of the benefit of them.

The trial court took the view that it did not appear as a fact that the plaintiff rendered services to the defendants either on "the honest belief that a request had been made of him to render services as a broker" or "under circumstances indicating that he expected to be paid." The court further held that the services which this plaintiff rendered were rendered previous to the entrance of these defendants as prospective purchasers, and that "no services were rendered by the plaintiff as a broker except for Parisi and Sleeper," the original owners. For this reason the court felt that the case did not come within either one of the two conditions which we stated in the *Weinhouse* case.

As already pointed out, it is not for us to test the verdict of the jury by weighing the evidence appearing in the record. It is obvious that we might thus credit certain evidence which the jury discredited, and fail to credit certain evidence which the jury believed to be true. The correct rule requires that the evidence be studied to determine whether there exists a reasonable basis therein for the conclusions which the jury reached, and the presumption should be indulged that evidence which is inconsistent with these conclusions was rejected by the jury.

We are satisfied from a careful study and analysis of the evidence, that the facts we have above summarized could fairly and reasonably have been found by the jury to be established. It is apparent (1) that Sheketoff acted as the agent and representative of all the defendants, (2) that it became obvious to all parties that the loan originally obtained for Parisi and Sleeper, would not be made to those parties, (3) that the question then arose whether Lomas & Nettleton would make the loan to these defendants if the latter concluded to take over the property, (4) that the defendants desired an assurance that the money would be thus loaned to them, (5) that the interviews between Sheketoff and Viens and the plaintiff were in behalf of all the defendants and for this purpose, (6) that the plaintiff rendered services to the defendants at their express request in an endeavor to increase the amount of the proposed loan to them, (7) that the plaintiff rendered a direct service to the defendants in conformity to the wish they had expressed to him, in obtaining and holding for their benefit an offer to them of $110,000, which had previously been made to Parisi and Sleeper, (8) that the plaintiff thus made it possible for the defendants to go forward with their plan to bid in the property, (9) that the defendants

in buying in the property acted upon this assurance obtained for them from Lomas & Nettleton, and (10) that the defendants accepted the services of the plaintiff and its result and took the money thus secured for them upon the exact terms which had been arranged by the plaintiff.

Under these circumstances, the case clearly comes within the terms of *Weinhouse* v. *Cronin, supra.* It is not necessary for us to decide whether the contract was express or implied. While it might have been found by the jury that there was an express solicitation by the defendants of the plaintiff's services after the failure of the loan to Parisi and Sleeper, yet even if this were doubtful it is beyond serious question, and the jury could reasonably have found, that the plaintiff, in expectation of compensation, secured an offer for the defendants from Lomas & Nettleton to advance this money to them in the stead of Parisi and Sleeper, to whom they had previously promised it. These defendants accepted this offer, and thus availed themselves of the benefit of the plaintiff's services. It follows that the jury was justified in rendering its verdict for the plaintiff, and the court erred in setting it aside.

There is error, the judgment is reversed, and the Superior Court is directed to enter judgment for the plaintiff on the verdict.

In this opinion the other judges concurred.