THE HANCOCK COMPANY, INCORPORATED, *vs.* S. Z. POLI CORPORATION ET AL.

Third Judicial District, New Haven, June Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 3d—decided July 29th, 1931.

*Philip Pond* and *Daniel D. Morgan,* with whom, on the brief, was *Harry L. Edlin,* for the appellant (plaintiff).

*Louis Weinstein* and *Benjamin Slade,* for the appellees (defendants).

BANKS, J.  The complaint alleges that the defendant Poli employed the plaintiff as a broker to procure a purchaser for certain theatrical properties, known as the Poli circuit of theaters, which were owned by four corporations of which Poli was president and treasurer and in which he held all the stock except a small minority interest held by one or more members of his family and by the defendant Sagal; that the plaintiff procured purchasers for the properties upon the terms and at the price for which Poli had authorized the plaintiff to offer them for sale, that the purchasers made an offer for the properties which Poli accepted, but that he afterward refused to carry out the sale. The complaint further alleges that the reasonable value of the plaintiff's services was $986,000, and that the defendants agreed to pay it a brokerage commission of $700,000 in cash, and that it was also to receive and retain certain other commissions and fees aggregating $286,000.  The answer denies that the plaintiff was employed to procure a purchaser of the theatrical properties, and denies that it had procured any purchaser ready, able and willing to buy them upon any terms upon which the defendants had authorized the plaintiff to offer them for sale, or who had made any offers for the properties which the defendants had accepted.  Upon the trial the plaintiff offered evidence to prove and claimed to have proved, among others, the following facts: In May, 1926, Poli employed the plaintiff to procure a purchaser for the new Poli circuit of theatres at a price of $25,000,000, and informed the plaintiff that the defendant Sagal was authorized to conduct all negotiations for such sale.  The $25,000,000 was to be payable, $3,000,000

to. $5,000,000 in cash. and the balance secured by a first mortgage on the properties. Thereafter Poli requested the plaintiff to submit a purchase price based upon a certain amount of cash and a certain amount of life insurance, which was done, and the proposition was changed to a purchase price based upon a cash payment and a life insurance set-up which would ultimately net to Poli or his estate or beneficiaries $25,-000,000, it being agreed that the brokerage fee should be added to the purchase price, and that the defendant would protect the plaintiff to the extent of that fee. In May, 1927, the plaintiff entered into negotiations with the Stanley Company of America for the purchase by it of the Poli properties, and submitted to Poli in writing a proposition which was to be submitted to the Stanley Company. On May 20th, 1927, this proposition was submitted by the plaintiff to the officials of the Stanley Company and Sagal stated over the telephone that the deal was closed if Mr. Albee of the B. F. Keith Corporation could be gotten in. On June 19th, 1927, a meeting was held in Atlantic City at which Sagal was present. At first he refused to go through with the proposition in the form in which it was presented for the reason that the life insurance provided was not participating insurance, but thereafter, an agreement was reached upon the terms set forth in plaintiff's Exhibit H. On October 6th, 1927, the B. F. Keith Corporation and the Stanley Company of America delivered to the plaintiff a signed agreement confirming the agreement to purchase the Poli properties, which signed agreement (plaintiff's Exhibit A) was delivered to the defendants about October 11th, 1927. The consideration for the purchase of the properties under this agreement was $18,-047,012 payable as follows: $4,700,000 in cash and $6,000,000 by the delivery of second mortgage bonds

subject to a first mortgage bond issue of $13,000,000, the balance of $7,347,012 being the premiums to be paid upon $15,000,000 fully paid endowment insurance upon the life or lives of one or more of Poli's daughters, the face value of the policies making the total return to the defendants $25,700,000. Exhibit A provided that the agreement was subject to the purchasers being able to procure a satisfactory commitment from bankers to underwrite the first mortgage bond issue, and on November 23d, 1927, the defendants were informed that such commitment had been arranged. The Stanley Company and the B. F. Keith Corporation were ready, able and willing to purchase these properties upon the terms and at the price for which the defendant had informed the plaintiff they were willing to sell.

The defendants offered evidence to prove, and claimed to have proved, that at no time was the plaintiff authorized to act as their broker, that Sagal had no authority to accept any proposition for the sale of the Poli properties, that neither he nor Poli ever did accept any such proposition, and that neither the B. F. Keith Corporation nor the Stanley Company of America was at any time ready or able to purchase the properties upon any terms whatsoever.

After the jury had been out for several hours they returned and asked for further instructions which were given them, returned a second time reporting a disagreement, and were sent back by the court for further consideration of the case. After two hours further consideration they returned and reported that they were unable to reach an agreement. The court then charged them that, in order to recover, the plaintiff must show that it had produced a customer ready, able and willing to buy upon the terms fixed or agreed to by the defend-

ants, and said: "The only evidence I recall as to the terms on which Mr. Poli said he would sell, was that he would sell for $25,000,000; he did not specify any terms of payment beyond that; and unless a man produced $25,000,000 in cash to buy it for cash, there is no other way of accepting Mr. Poli's terms under that offer; therefore, unless there was a purchaser who would purchase for cash—and there is no evidence or claim to that effect—you must find, in order to find that the purchaser was produced, either that Mr. Poli specified the terms in which he would accept payment, or that, when an offer was made to him, he agreed to accept the terms of that offer. . . . Now, I can recall no evidence in this case of the terms which would have made a contract of sale. There is no evidence that Mr. Poli proposed any of these terms, nor that he accepted the terms in the offers which were made to him, and unless he either proposed terms which purchasers accepted, or they made an offer of terms which Mr. Poli or Mr. Sagal or both accepted, there were no purchasers produced ready, able and willing to buy on the terms of the defendant; unless there were purchasers produced the plaintiff cannot recover." The court then sent the jury back for further consideration, and they returned in six minutes with a verdict in favor of the defendants. The plaintiff contends, with reason, that by these instructions, the court in effect directed the jury to bring in a verdic in favor of the defendant, which it very promptly did. The court correctly told the jury, both here and in the original charge, that the plaintiff, in order to recover, must prove that it had produced a customer ready, able and willing to buy upon the terms fixed or agreed to by the defendants. It then said that, in order to find that such customer was produced, the jury must find, either that Poli specified the terms

upon which he would sell, or agreed to accept the terms of an offer made to him, and then stated, unequivocally, that there was no evidence, either that Poli proposed any of those terms, or accepted the terms in the offers which were made to him. If the jury adopted this statement of the court as to the lack of evidence to support the plaintiff's case there was nothing left for them to do but bring in a verdict in favor of the defendant. The evidence is not before us, and the charge is to be tested by the finding. In the finding it is stated that the plaintiff offered evidence to prove that the Stanley Company of America and the B. F. Keith Corporation, who were the purchasers produced by the plaintiff, were ready, able and willing to purchase the Poli properties upon the terms and at the price for which the defendants had informed the plaintiff they were willing to sell, and further that, at the meeting held on June 19th, 1927, an agreement was reached upon the terms set forth in the plaintiff's Exhibit H, which was afterward confirmed by the written agreement (plaintiff's Exhibit A) executed October 6th, 1927. It is true that Exhibit H was an unsigned memorandum which purported to give only the bare outlines of the terms of sale, and that Exhibit A upon its face seems to be incomplete and uncertain and not an offer the acceptance of which would constitute a binding contract of sale. But proof of the execution of an enforceable agreement of sale was not essential to the plaintiff's case. *Wright* v. *Reid,* 111 Conn. 141, 149 Atl. 229. It must prove, either that the owner had prescribed the terms upon which he would sell, and that the plaintiff had produced a customer ready, able and willing to buy upon those terms, or that the customer and owner had reached an agreement as to terms of sale, and the customer was able to buy upon those

terms. Proof of either set of facts is sufficient for the plaintiff's case, and the two are by no means identical. If, in placing the property in the agent's hands for sale, the owner has not fixed the terms upon which he will sell, the agent has not earned his commission unless and until the customer he produces has reached an agreement with the owner as to the terms of sale. If, however, the owner informs the agent of the terms upon which he will sell, and the latter produces a customer ready, able and willing to buy upon those terms, he has earned his commission though the sale falls through because the owner refuses to sell on such terms. *Dworski* v. *Lowe*, 88 Conn. 555, 92 Atl. 112. In whatever doubt we may be left by the finding as to whether the plaintiff produced any evidence of an agreement between the defendants and the customers upon the terms of the proposed sale, the finding, in the absence of the evidence, is conclusive that the plaintiff did produce evidence of the ultimate fact that it procured customers who were ready, able and willing to buy upon the terms fixed by Poli as those upon which he would sell. There would seem, therefore, to be no escape from the conclusion that the court was in error in its statement to the jury as to the lack of evidence in support of the plaintiff's case, and thus practically telling them how to decide a disputed issue of fact. *Sullivan* v. *Nesbit*, 97 Conn. 474, 117 Atl. 502. The court's statement that there was no evidence that Poli specified any terms upon which he would sell other than $25,000,000 in cash, or had accepted any of the offers made to him, left the jury no alternative but to bring in a defendant's verdict. Its controlling weight with the jury is indicated by the promptness with which they brought in such a verdict, though they had previously twice reported an inability to agree after long deliberation.

The complaint is so drafted as to enable the plaintiff to offer proof, which the finding states it did offer, in support of a case based upon either of the two grounds of recovery above referred to, to wit: (a) that Poli had informed it of the terms upon which he would sell and it had produced customers ready, able and willing to buy upon the terms prescribed by him, or (b) that the customers produced by the plaintiff had subsequently reached an agreement with Poli as to the terms of sale. A number of excerpts from the charge to which exception is taken are correct only if limited in their application to one or the other of these grounds of recovery. The court repeatedly told the jury that the plaintiff must prove all the essential terms. This was correct as to a recovery upon ground (b), but not applicable to a recovery sought upon ground (a). Confusion and possible misinterpretation of the charge would have been avoided if the court had made clear to the jury the two separate grounds of recovery claimed by the plaintiff, and the essential elements of proof required for a recovery under each. The charge that, if the defendants had entered into a binding contract to sell their properties to someone else, and the plaintiff had knowledge of that fact, the agency was then ended, was not one of which the plaintiff could complain, coupled as it was with the proviso that the plaintiff had earned its commission if it had procured a customer before that contract was made.

The other claimed errors in the charge, in the refusal of the court to charge as requested, and in its refusal to set aside the verdict on account of the claimed prejudicial remarks of counsel, do not raise any question requiring discussion which would be helpful on a retrial.

The court ruled correctly in excluding evidence of

554

expenses incurred by the plaintiff as not within the issues. The evidence of the witness Crenshaw as to what he heard Cassmann say over the telephone was hearsay and properly excluded. The inquiries addressed to Goodman as to the preparation or presentation of a formal contract of sale were properly admitted. They were relevant to the issue as to whether the Keith Corporation had made the offer of purchase alleged in the complaint. It was open to the plaintiff to show why such formal contract was not prepared or presented to the defendants, and the questions of the same witness Goodman upon cross-examination as to whether Shoolman presented to Albee a duplicate of Exhibit A and requested the Keith-Albee Company to join in the purchase of the properties, stating that he had bought them, and whether the fact that Shoolman's option came to the knowledge of Albee and the witness' principals had any bearing upon the failure to complete a firm committment from the banking organizations, were admissible for the purpose of explaining the failure to prepare such formal contract. The other questions of this witness upon cross-examination to which exception was taken, were properly excluded, since they called for hearsay evidence or were otherwise objectionable. The letter of the defendant Poli, which was offered in evidence upon the cross-examination of the defendant Sagal, is not in the record and we are, therefore, unable to pass upon the correctness of the ruling excluding it.

The defendants offered in evidence a paper referred to as an option or contract of sale of the Poli properties to Shoolman & Strauss, dated September 29th, 1927, claiming it to be relevant to show a revocation of any agency that may have existed prior to October 6th, 1927, the date of the execution of plaintiff's Exhibit A. The court did not err in admitting this paper

in evidence. In the case of the ordinary contract of employment of a broker the owner may terminate the employment at any time before the broker had earned his commission by producing a customer ready, able and willing to buy upon the terms prescribed by him, and the sale of the property by the owner has that effect. *Harris* v. *McPherson,* 97 Conn. 164, 169, 115 Atl. 723. The defendants claimed that the plaintiff had not produced such a customer, if at all, prior to October 6th, 1927, and proof of the revocation of the agency prior to that date was relevant and admissible under the original answer. The other rulings on evidence were not discussed upon the brief or argument, and were either clearly right or not of such importance as to constitute reversible error.

The defendants filed a bill of exceptions in which they except to the failure of the court to comply with a number of requests to charge the jury. The defendants' contention is that upon the pleadings and proof there was nothing to go to the jury, and in these requests they asked the court to charge the jury that the verdict must be in their favor since Exhibit A, the writing executed by the purchasers produced by the plaintiff, was merely a conditional offer and not so complete in its terms as to be susceptible of an acceptance by the defendants, but merely a step in negotiations leading up to a binding agreement. Whatever the infirmities of Exhibit A as a final and enforceable agreement, that instrument was not the whole of the plaintiff's case, nor, necessarily, a vital part of it. As we have already stated, it was sufficient for the plaintiff to prove that it had produced a customer ready, able and willing to buy upon terms which had been prescribed by the owner. Upon this record, with a finding that there was such evidence in the case,

the court would not have been justified in charging the jury in accordance with these requests.

There is error and a new trial is ordered.

In this opinion the other judges concurred.