### ELIZABETH V. DALLAS
*vs.*
### MINNIE O. S. EDWARDS

Court of Common Pleas    Fairfield County    File No. 44574

MEMORANDUM FILED FEBRUARY 24, 1944.

*Marsh, Day & Calhoun,* of Bridgeport, for the Plaintiff.

*J. Robert Beecher,* of Bridgeport, for the Defendant.

CULLINAN, J.   In the controversial field of real estate broker's commissions, Connecticut, as early as *Weinhouse vs. Cronin,* 68 Conn. 250, designed a pattern for recovery in which neither the passage of a half century nor innumerable succeeding judicial decisions has wrought the slightest altera‑ tion.   Generally speaking, there are two sets of facts, either of which will entitle a broker to compensation: (1) if the conduct of the property owner was such that the broker, acting fairly, had the honest belief that a lawful request had been made for his services, and the broker, acting upon that request, rendered such services; or, (2) if the broker, without a request from the property owner, rendered services under circum‑ stances indicating he expected to be paid therefor, and the owner, knowing of those services, availed himself of the bene‑ fit of them.   *Canfield vs. Sheketoff,* 104 Conn. 28; *Sullo vs. Luysterborghs,* 129 *id.* 172.

The defendant, some years prior to 1940, acquired title to a one‑family Bridgeport dwelling at 27 Hayes Street, which, in December, 1940, became vacant, whereupon the defendant determined to dispose of the holding by sale.   Throughout her period of ownership, the defendant, from time to time, visited the property and had occasion to meet and know the plaintiff, an intelligent reliable neighbor, who, with her hus‑ band, occupied their residence at 9 Hayes Street.

Faced with a mid‑winter vacancy by reason of the removal of her tenant, the defendant took counsel with the plaintiff, indicated her intention of selling the dwelling, and in the language of the plaintiff, said: "I don't know what to do.   I am all upset about this place.   Now, Mrs. Dallas, I wonder would you put your name on that door, a card with your name on it.   You might just as well have the commission as anybody else.   Anyway, you know more about the place than I do."

To this proposal, the plaintiff claims to have added: "Now, Mrs. Edwards, what is the price?"   In reply to which the de‑

fendant is said to have answered: "Forty-six hundred dollars." Thereafter, terms were discussed in detail and the plaintiff consented to become a broker for the property.

In furtherance of her commission, Mrs. Dallas affixed a calling card to the exterior of the dwelling, indicating that inquiries would be welcome; retained the keys to the premises; erected a "for sale" sign on a vacant lot which adjoined the dwelling and which was to be included in the sale; and, during the succeeding eight or ten weeks, spent a very considerable amount of time conducting prospective purchasers through the property.

Ultimately, in late February, 1941, the plaintiff was approached by Mr. Christian Dautel, who evinced an interest and requested permission to inspect the premises. During his initial survey of the property, Mr. Dautel was accompanied by the plaintiff. At its conclusion he continued to be a prospective purchaser, requesting that he be given time to confer with his wife. Subsequent visits to the property were made by both Mr. and Mrs. Dautel, culminating in their execution of a written agreement wherein they agreed to purchase and wherein the defendant agreed to sell, for $4,800. Incidentally, it is important and significant to observe that immediately after Mr. Dautel made his original inquiry and inspection, news of this fact was communicated to the defendant by the plaintiff, whereupon the defendant is claimed to have said: "You encourage them along."

Since the transaction was consummated on or about March 15, 1941, the plaintiff seeks a commission, claiming that she was the predominant, efficient procuring cause in bringing the defendant and her purchaser together and in effecting the sale. *Housatonic Valley Insurance Agency, Inc. vs. Klipstein,* 125 Conn. 274.

Obviously, litigation of this character presents disputed questions of fact. The plaintiff's claims, in many particulars, have been denied by the defendant. However, these two highly essential details have not be controverted:

1. The defendant knew that the property was being shown to prospective customers by the plaintiff, who retained the keys to the premises for this express purpose.

2. The defendant did not meet the ultimate purchasers until

their interest and availability had been directed to her attention by the plaintiff.

Logically, then, the next inquiry concerns itself with a determination of whether the conduct of the parties was such as to bring them within either of the aforementioned patterns for recovery. And there can be little question but that by reason of the defendant's conduct, the plaintiff, acting fairly, had the honest belief that a lawful request had been made for her services and that pursuant to such request services were rendered. Thus, she must recover.

Attention might well be directed to the analogous matter of *DeToro vs. Cannate,* 114 Conn. 712, 713, wherein was said: "The plaintiff [broker] called the attention of the purchaser to the property, with the result that he ultimately did purchase it, though through negotiations carried on directly with the owner; and there was no breaking off of the relationship of the purchaser as the customer of the plaintiff and no intervention of any other broker or intermediary. Had it not been for the services of the plaintiff it is fair to conclude that the sale would not have been made. The conclusion of the trial court that the plaintiff was the procuring cause of the sale must stand."

From the fact that the plaintiff did not attend the closing of the sale, the defendant has elected to attempt to draw an unfavorable inference. "The fact that the plaintiff did not take part in the final closing....is not of controlling importance." *Housatonic Valley Insurance Agency, Inc., vs. Klipstein, supra,* p. 280.

Judgment may enter for the plaintiff to recover of the defendant the sum of $240, representing five per centum, the prevailing community rate, of the sale price; together with interest thereon, from March 15, 1941, in the sum of $42.36; together with taxable costs.