HARRY MERWIN *v*. VIOLA G. BEARDSLEY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 10—decided November 14, 1947

*William F. Geenty,* with whom was *R. William Bohonnon,* for the appellant (defendant).

*Lyman H. Steele,* for the appellee (plaintiff).

JENNINGS, J. This is an appeal from a judgment for the plaintiff to recover a broker's commission for the sale of the defendant's real estate.

With such corrections of the finding as we find the defendant entitled to, the facts necessary for the determination of the issues are as follows: The plaintiff was a New Haven real estate broker, which fact the defendant knew. The defendant owned real estate in New Haven. Early in 1945, the Lombardis, former clients of the plaintiff, asked him to find a place for them to live. He was unable to find an apartment and showed them several properties which he thought they might be interested in purchasing. On April 30, 1945, the plaintiff telephoned the defendant and told her that he wished to show her house to prospective purchasers. He knew that her house had been listed with another broker in August,

1944, at $13,500. She replied that she had not decided to sell but that he might show the house to his customers without any obligation on her part. The same day he brought the Lombardis to her home and introduced them to her; they inspected the house and offered to buy it at $13,500. She said she would not sell at this price, that she was not ready to close a deal and that she wished to talk the matter over with friends, adding that she would inform the plaintiff of her decision. The plaintiff telephoned her next day and she told him the price was $17,000. He said he would list it at that figure and let her know if the Lombardis would pay it. He informed the Lombardis of the price. They refused to pay it, but said they would pay $15,000. The plaintiff so informed the defendant and, when she hesitated about accepting the offer, said that he might be able to add the commission of $750 to the Lombardis' offer, for which she thanked him. He then asked the Lombardis to make an offer of $15,750, but they refused. The plaintiff thereafter showed the Lombardis other properties for sale but continued to urge them to buy the defendant's house. They made a deposit on another house. A few days later the defendant telephoned them and invited them to her house to discuss the purchase of her property. They called on the defendant the following day, May 31, 1945, and entered into a written agreement for the purchase of the house at a price of $15,000. The agreement contained the following provision: "Mr. & Mrs. Arthur Lombardi relieve Mrs. Viola G. Beardsley of any brokerage commission on sale of house." The defendant conveyed the property to the Lombardis on June 26, 1945.

On June 28, 1945, the plaintiff, learning of the transfer, wrote Lombardi as follows: "I was so sur-

prized to find that you had bought Mrs. Bearsley's property without considering me. It's unbelievable that trusted friends would do such a thing. There was hardly a house you considered that wasn't shown you in my office and I expect that my friends will be loyal for that service. I took you to 244 McKinley Av., Westville, introduced you to the owner and expected that if you did make up your mind to buy it that you would pay enought so that I would be paid for my services as I certainly was the procuring cause and entitled to a commission. I am sure you don't do any business without getting paid, either by the seller for getting the customer or the buyer for getting them a good buy, and as you and I knew Mrs. Beardsley's attitude regarding a commission it is squarely up to you. Anxiously awaiting your reply as I am sure you will want to do the right thing, I remain . . ." The plaintiff later secured legal advice and made demand on the defendant for a commission. No commission was paid him and he brought this action.

In addition to these facts, the trial court further found that at all times during the negotiations the defendant knew or should have known, as a reasonable person, that the plaintiff expected to receive from her payment of the usual commission (5 per cent of the sales price) if she sold the property to the Lombardis; that the plaintiff expected such payment; that the defendant did not inform him that she would not pay a commission if the Lombardis purchased the property; that she knew when she made the sale agreement that she was obligated to pay a commission to him; that the plaintiff initiated the negotiations between the defendant and the Lombardis and these were not broken off or abandoned before the sale, nor was the sale brought about by

any intervening cause independent of the plaintiff; and that the plaintiff was the efficient and procuring cause of the sale; and the court finally concluded that there was an implied contract on the part of the defendant to pay the plaintiff a commission of $750 and rendered judgment for him on that basis.

When a broker renders services in the sale of real estate without having been requested to do so, there may be an implied contract that the owner will pay him what those services are reasonably worth. *Weinhouse* v. *Cronin,* 68 Conn. 250, 253, 36 A. 45. In order to recover on such a contract, under the facts found in this case, the broker must prove that the services were rendered under circumstances indicating that he expected to be paid therefor, and that the defendant, knowing such circumstances, availed herself of the benefit of those services. Ibid. The question is ordinarily one of fact for the trial court. *Sullo* v. *Luysterborghs,* 129 Conn. 172, 175, 26 A. 2d 784.

There was no express contract in this case. An essential element of the implied contract on which the plaintiff relies is that he shall have rendered the services to the defendant in the expectation that he would be paid. The letter quoted above was written by him long after the negotiations conducted by him for the purchase of the property were completed and before litigation had started, and it amounts to a demand that the Lombardis pay him a commission. Its terms conclusively refute any possible claim that the plaintiff expected the defendant to do so. None of the other facts found are inconsistent therewith. On the contrary, they indicate, as did the facts in the *Weinhouse* case, that the plaintiff was acting for the purchasers and not for the seller. *Summa* v. *Dereskiawicz,* 82 Conn. 547, 551, 74 A. 906. The conclu-

sion of the trial court that there was an implied contract on the part of the defendant to pay the plaintiff a commission is deprived of essential support, and the plaintiff is not entitled to recover. *Weinhouse* v. *Cronin*, supra; see also *Gillette's Appeal*, 82 Conn. 500, 502, 74 A. 762; *Clark* v. *Diefendorf*, 109 Conn. 507, 510, 147 A. 33; *Cassidy* v. *Congdon*, 121 Conn. 68, 183 A. 1; *Butler* v. *Solomon*, 127 Conn. 613, 615, 18 A.2d 685; *Segnitz* v. *A. Grossenbach Co.*, 158 Wis. 511, 514, 149 N. W. 159; 3 Page, Contracts (2d Ed.) § 1446.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendant.

In this opinion MALTBIE, C. J., BROWN and ELLS, Js., concurred.

DICKENSON, J. (dissenting). The case presents the more or less common situation of the owner going behind the back of the broker to conclude a sale with a customer whom the broker has procured, in order to escape paying a commission. *Schlegal* v. *Allerton*, 65 Conn. 260, 32 A. 363; *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein*, 125 Conn. 274, 280, 5 A. 2d 16. In *Baretz* v. *Steinmetz*, 102 Conn. 148, 150, 128 A. 18, a similar case, we said: "The trial court reached the conclusion that the defendant had impliedly agreed to pay the plaintiff the customary broker's commission if the property was sold to Barone. The facts presented might be approached from several angles, but, if that conclusion is justified by them, we have no need to inquire farther. Largely depending as it does upon inferences to be drawn from facts proven and the determination of the intentions and expectations of the parties, it pre-

sents fundamentally an issue of fact." I see nothing so unreasonable or illogical in the trial court's conclusions as to justify this court in itself drawing inferences, deciding the facts and directing that judgment be entered for the defendant.