JOHN J. BERGIN, JR., ET AL. *v.* PHILIP GRAY

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued January 7—decided February 24, 1953

*William K. Lawlor,* for the appellants (plaintiffs).

*Walter F. Torrance, Jr.,* with whom was *Walter F. Torrance,* for the appellee (defendant).

BALDWIN, J. The plaintiffs have appealed from a judgment in favor of the defendant in their action for a real estate broker's commission. They seek extensive corrections of the finding in an effort to substitute their version of the transaction for that of the defendant. The finding was made upon conflicting testimony and is supported by the evidence. It must stand.

The essential facts are these: The plaintiff Bergin was an insurance adjuster. The plaintiff Bowes was a title searcher. Neither was primarily engaged in the real estate business. The defendant owned a house in Waterbury which he wanted to sell. He met Bergin, whom he had known for about a year, in a tavern. He asked him whether he was a real estate agent and Bergin replied that he was not. The defendant told Bergin that he wished to sell his house, that he was uncertain of the proper price to ask and that he thought Bergin, an insurance adjuster, might know something about real estate values. Bergin offered his services as an agent for the sale of the property. The defendant replied that he did not intend to employ an agent. Bergin then asked for permission to show the property to an undesignated friend, who he stated was interested in purchasing it as an investment. The defendant granted him permission to show the property to the friend. Meantime, the defendant went to Maine, after telling his wife to show the house to Bergin and his friend. Bergin brought Bowes to the defendant's house. They were shown around by the

defendant's wife, who believed that Bowes was the friend of Bergin to whom her husband had referred. When the plaintiffs said that they were going to undertake the sale of the house on a commission basis, the defendant's wife protested and stated that she had not been authorized to employ an agent. She told them that they would have to see her husband if any commission was involved.

Two days later, the plaintiffs, without the knowledge or consent of the defendant, inserted an advertisement in the local newspaper offering the house for sale. Mrs. Dragon answered the advertisement. The plaintiff Bowes gave her the address of the house and stated that the price was $16,000. Later in the day, he called her on the telephone, told her that she should not visit the house without him, and arranged to meet her there that same evening. On the same day, at about 2 o'clock in the afternoon, the defendant's wife, realizing that the plaintiffs had placed the house on sale, telephoned Bergin and told him to "stop everything." Upon receiving this information, Bowes notified Mrs. Dragon that the house had been sold and canceled the appointment for the evening. About 7 p.m., Mrs. Dragon and her husband, notwithstanding Bowes's statement that the house had been sold, visited it on the chance that the supposed purchasers might have been unable to consummate their transaction. The defendant's wife, who had never seen or heard of Mr. and Mrs. Dragon, told them that the house had not been sold and that they could discuss the purchase of it with her husband, who was to return later that evening. Upon his return, the defendant talked with the Dragons, told them that he had not employed any agent and that they could deal directly with him. The Dragons agreed to purchase the defendant's

property for $16,000. The defendant had never met the purchasers before and knew nothing of the advertisement inserted in the newspaper by the plaintiffs until after the sale was completed.

Upon these facts, the court concluded that there was no agreement, express or implied, to employ the plaintiffs as brokers. The facts negative any possibility of establishing an express agreement. The only question worthy of discussion is whether an implied promise on the part of the defendant to pay a commission to the plaintiffs can be established. To recover on such a theory, the plaintiffs must prove that the services were rendered under circumstances indicating that they expected to be paid therefor and that the defendant, knowing the circumstances, availed himself of the benefits of these services. *Merwin* v. *Beardsley,* 134 Conn. 212, 216, 56 A.2d 517; *Sullo* v. *Luysterborghs,* 129 Conn. 172, 174, 26 A.2d 784; *Cassidy* v. *Congdon,* 121 Conn. 68, 69, 183 A. 1; *Canfield* v. *Sheketoff,* 104 Conn. 28, 33, 132 A. 401; *Weinhouse* v. *Cronin,* 68 Conn. 250, 253, 36 A. 45. The defendant did give to Bergin, at the latter's request, permission to show the house to an undesignated friend. This was not an authorization to advertise it for sale in a newspaper even though the advertisement did produce the purchaser. The defendant had told Bergin directly that he did not intend to employ an agent. As soon as the defendant's wife realized that the plaintiffs were offering the house for sale she repudiated them and their attempts to sell it. See *Hancock Co.* v. *S. Z Poli Corporation,* 113 Conn. 545, 555, 155 A. 914. They acceded to the repudiation by telling Mrs. Dragon that the house had been sold. Then too, neither the fact of the advertisement nor the identity of the purchaser whom it produced was known to

the defendant until after the sale had been consummated. Since the defendant did not have this knowledge, it cannot be said that he availed himself of the services of the plaintiffs knowing that they expected to be compensated therefor. The basis upon which any implied promise must rest is wanting. The court's conclusion that there was no implied agreement on the part of the defendant to pay the plaintiffs a commission was correct.

There is no error.

In this opinion the other judges concurred.