ERNESTINE POUNCEY *v.* WILTON CARRAWAY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. 14-684-35025

Argued March 24—decided April 18, 1969

*James A. Plessinger,* of Meriden, for the appellant (defendant).

*Robert K. Killian,* attorney general, and *Francis J. MacGregor,* assistant attorney general, for the appellee (plaintiff).

DEARINGTON, J. The plaintiff brought this action under § 52-435a of the General Statutes, alleging she gave birth on December 15, 1965, to a child begotten on March 15, 1965, and that the defendant was the father of the child. After a jury trial a verdict was returned for the plaintiff and, judgment having been rendered thereon, the defendant appealed. At the conclusion of the evidence the defendant moved for a directed verdict, which motion was denied. After the verdict had been returned the defendant moved

for judgment notwithstanding the verdict and his motion was denied. In his appeal he has assigned error in the denial of his motions, in certain rulings on evidence and in comments to the jury claimed to be harmful.

We first consider the defendant's assignment of error relating to comments of the court claimed to have had an adverse effect on the jury. During the cross-examination of the plaintiff, the defendant offered both a Meriden Hospital admission sheet and a birth certificate of the child. Both documents indicated a blank space where ordinarily the name of the father would appear. Both documents were received in evidence, the court remarking in each instance that they were received for "what it's worth." Such comments could hardly be said to be prejudicial; furthermore, there was no objection made or exception taken as required by our practice. Practice Book § 226; see *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 502. Later, on direct examination, the defendant was asked whether he had seen two men (named) at the plaintiff's apartment in December of 1965. The plaintiff objected to such evidence on the ground that the answer would be irrelevant. The court, in admitting the witness' answer, "Yes, I did," commented as follows: "Well, for what it's worth, I'm going to admit it. I think it is irrelevant at this point because they haven't been tied in." Again, no objection was made or exception taken by the defendant. Aside from such procedural omissions, however, and in the absence of an offer to develop relevancy, the question called for an irrelevant answer. 1 Jones, Evidence (5th Ed.) § 170; see *Ferguson* v. *Smazer,* 151 Conn. 226, 233. Such statements in each instance constituted merely comments on the weight of the evidence which were not beyond the discretion of the trial judge. *Vinci* v. *O'Neill,* 103 Conn. 647, 655.

On direct examination the plaintiff, in respect to the spaces left blank in the hospital admission sheet and the birth certificate, was asked if that procedure is generally followed. She answered, "Yes, it is generally done when it's involving a woman that's not married to a man and she's having a baby for him, unless the father signs—he voluntarily signs the birth certificate." The defendant objected and took an exception, claiming that the witness was not in a position to know what is generally done. That the witness was unacquainted with the hospital procedure might be open to question for, on the record, this was her third experience in such matters. If there was any infirmity in her answer, it could be exposed on cross-examination. There is no merit in this assignment of error.

The defendant has further assigned error in the court's refusal to allow him to write the names of certain individuals on a blackboard. The plaintiff's objection was sustained. The defendant argued that the names would be reappearing throughout the trial and "the only way one can keep an idea or an accurate picture of what's going on is to have these names in front of them." The defendant made no objection, nor did he take an exception to the court's ruling. Aside from the defendant's failure to comply with procedural requirements, it is difficult to reconcile the mere writing of names on a blackboard, for the purpose offered, with claimed demonstrable evidence. It is only when it appears that this type of evidence can be of real assistance and is not likely to be given undue weight by a jury that the trial court may in its discretion admit such evidence. See *Sellew* v. *Middletown*, 121 Conn. 331, 333. No abuse of discretion has been shown here.

The basic claim of the defendant is that in paternity proceedings the putative father is not accorded the same statutory immunity as that

accorded the mother. General Statutes § 52-435b provides that the mother "shall not be excused from testifying because her evidence may tend to disgrace or incriminate her; nor shall she thereafter be prosecuted for any criminal act about which she testifies in connection with such proceedings." The defendant contends that since such immunity is unilateral in its application his rights under the fourteenth amendment to the federal constitution have been transgressed, and he could not, therefore, adequately conduct his defense. The plaintiff was a married woman, and the defendant argues that if in testifying he admitted relations with her he would expose himself to prosecution for adultery, a felony, and he further asserts that any witness he might call in his defense who was shown to have had relations with the plaintiff would expose himself to possible prosecution.

The privilege against self-incrimination can be claimed in any proceeding, be it criminal, civil, or otherwise; it protects any disclosure which any witness may reasonably apprehend could be used in a criminal prosecution. Obviously, this protection extended to the defendant. *In re Gault,* 387 U.S. 1; see 58 Am. Jur., Witnesses, § 45. In the instant case it should be noted that no witness was produced by the defendant who claimed any privilege not to give self-incriminating evidence. Moreover, we are here concerned, not with a possible defense, but solely with the constitutionality of a statute exempting a mother of an illegitimate child from prosecution for the matter to which she is required to testify. The cases cited by the defendant do not bear on the question of immunity accorded one in this type of a proceeding. The immunity privilege grants absolute immunity, is intended solely for the protection of the mother, and is coextensive with the immunity secured her by the constitution as to self-

incrimination, and under such circumstances her testimony may be required. The statute in this respect is not unconstitutional. 58 Am. Jur., Witnesses, § 86, and cases cited. Furthermore, the question of constitutionality of the statute could only be raised by the plaintiff after having been called to testify and not by the defendant, for it in no way concerned him. 4 Jones, Evidence (5th Ed.) § 859.

We now consider whether on the evidence a directed verdict would have been proper. Only if that question is answered affirmatively do we come to the question whether the court erred in refusing to render judgment for the defendant notwithstanding the verdict. *Hemmings* v. *Weinstein,* 151 Conn. 502, 503. "In deciding the primary question, we give the evidence the most favorable construction in support of the verdict of which it is reasonably capable." Id., 504. The verdict was reached on conflicting evidence and should stand unless the jury could not reasonably have reached the conclusion which they did upon the evidence. *Canfield* v. *Sheketoff,* 104 Conn. 28, 30. "A verdict is not to be upheld or set aside by weighing the evidence and determining the credibility of witnesses, for this is the exclusive function of the jurymen themselves, and if they acted reasonably, their conclusion upon these points is final. It is not for us therefore to say what portions of the evidence should or should not have been believed by the jury in this case, but we are bound rather to decide whether the verdict was sound upon any reasonable and fair interpretation of the evidence." Ibid.

The following facts are either undisputed or could reasonably have been found by the jury to have been established. The plaintiff was a married woman and had been separated and living apart from her husband for some four years prior to the

approximate period of conception. She had previously given birth to a child of whom the defendant was the father, which child was living with her and being supported by the defendant. During March of 1965, the defendant was going with the plaintiff and having sexual relations with her on a fairly regular basis. During the time of conception, she did not have sexual relations with any other man. Sometime in April she realized she was pregnant. She informed the defendant of her condition, and he did not deny being the father. She accused the defendant of being the father and told others he was the father during her pregnancy. The child was born December 15, 1965. During the trial (November 12, 1968) the child was offered in evidence to show a resemblance of features between her and the defendant. The defendant's factual defense consisted of a denial of paternity and evidence claimed to show that several other men had been seen in the plaintiff's apartment at about the time of conception.

Upon these facts, with the inferences to be reasonably drawn from them, the jury could reasonably conclude that the defendant was the father of the child. The court committed no error in denying the motion for a directed verdict in this respect. Since the denial of the motion for a directed verdict was proper, it necessarily follows that a denial of the motion to render judgment for the defendant notwithstanding the verdict was proper. *Hemmings* v. *Weinstein, supra,* 503.

There is no error.

In this opinion DiCENZO, J., concurred.

JACOBS, J. (concurring). In proceedings instituted under the provisions of § 52-435a of the General Statutes, the jury returned a verdict adjudging the

defendant the father of a female child of Ernestine Pouncey, a married woman, begotten by a man other than her husband. Judgment was rendered on the verdict.[1] The court made an order directing the defendant to pay the sum of $1582.28 (being the total amount of the lying-in expenses and accrued maintenance), and a reasonable attorney's fee fixed at $250; and he was further ordered to contribute the sum of $10 a week toward the support of the child until she attains the age of eighteen years—all payments ordered to be made to the family relations division of the Circuit Court. See §§ 52-442 and 17-323a; Practice Book, Forms 785, 810; Uniform Act on Paternity § 11, 9B U.L.A. 528.

The evidence before us, in all its cumulative significance, points with overwhelming force to one conclusion and one only: the defendant begot the child.

The constitutional claim advanced in the court below and pressed on appeal is that § 52-435b of the General Statutes[2] is incompatible with the equal protection clause in that it grants the mother in paternity proceedings an immunity from prosecu-

---

[1] "It is true that under our law, a bastardy action is a civil proceeding. *Hamden* v. *Collins,* 85 Conn. 327, 330 . . . ; *Pelak* v. *Karpa,* 146 Conn. 370, 372 . . . . Under General Statutes §§ 52-438 and 52-442 and Forms 785, 786 and 812 in the 1963 Practice Book, it is clear that the verdict of the jury is limited to the issue of paternity and is in the form of 'guilty' or 'not guilty' as the case may be. Clerks of court should see to it that proper verdict forms are submitted to the jury. This procedure was not followed in the present case." *Ferguson* v. *Smazer,* 151 Conn. 226, 227 n.1; see *Fulmore* v. *Deveaux,* 3 Conn. Cir. Ct. 553, 554 n.2; note, 94 A.L.R.2d 1128.

[2] "Sec. 52-435b. TESTIMONY OF MOTHER. The mother of any child for whom adjudication of paternity is sought in paternity proceedings shall not be excused from testifying because her evidence may tend to disgrace or incriminate her; nor shall she thereafter be prosecuted for any criminal act about which she testifies in connection with such proceedings."

tion but a similar immunity is not afforded the putative father.

" 'Immunity' signifies the *nonliability for the offense* itself; 'privilege' signifies the *noncompellability to speak* about the offense. By an immunity the offender's guilt ceases; under a privilege, it continues." 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2281, p. 493. The statute involved here "may be called [one of the] *immunity-from-prosecution* statutes. They provide that disclosure is compellable but that the *witness shall not be prosecuted* . . . on account of any matter concerning which . . . [she] was required to produce evidence." Id., p. 495 n.11.

It is doubtful whether, ordinarily, there is need for an immunity provision generally applicable to civil situations. Where, however, claims of privilege are reasonably to be expected and an immunity provision is needed, the special characteristics of the civil proceedings may call for a solution or for an individualized situation tailored to a specific proceeding. It can only be said in general that the statute should be construed, as it was doubtless designed, to effect a practical and beneficent purpose.[3] It is clear that the chief aim of the immunity provisions applicable to civil proceedings is to improve the efficiency of the civil remedies affected. "[T]he obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned." *Heike* v. *United States,* 227 U.S. 131, 142 (Holmes, J.).

---

[3] See 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2281, p. 498 n.11, listing a number of Connecticut immunity statutes.

In Connecticut, in paternity proceedings instituted by the mother, she being alive and present in court, "her testimony is made not only competent, but indispensable to maintain the suit." *Chaplin* v. *Hartshorne,* 6 Conn. 41, 44. Such evidence is "admitted on the ground of necessity." 10 Am. Jur. 2d 870, Bastards, § 35; see Schatkin, Disputed Paternity Proceedings (4th Ed.), p. 766. "The interest of the mother in such cases is a pecuniary one." *Booth* v. *Hart,* 43 Conn. 480, 486. On the other hand, at least as far back as 1859, the privilege against self-incrimination was made applicable to a defendant in a bastardy action. *Norfolk* v. *Gaylord,* 28 Conn. 309, 312; *Malloy* v. *Hogan,* 150 Conn. 220, 223, rev'd on other grounds, 378 U.S. 1. Thus, in our view, the obvious purpose of the immunity statute now in question is to neutralize compellable testimony with the privilege of self-incrimination. The mere fact that the statute does not grant a similar immunity to the putative father "is the misfortune of his condition and not of any want of humanity in the law." *People ex. rel. Hackley* v. *Kelly,* 24 N.Y. 74, 83.