SEGNITZ, Respondent, vs. A. GROSSENBACH COMPANY, imp., Appellant.

*October 9—October 27 1914.*

*Contract to pay for services, when implied: Real-estate brokers: Commissions: Evidence: Appeal: Parties affected.*

1. In order to raise an implied contract to pay for services, they must have been performed under such circumstances as to give the recipient thereof some reason to think they were not gratuitous, nor performed for some other person, but with the expectation of compensation from the recipient, and they must have been beneficial to him.

2. A real-estate broker, upon learning that one M. contemplated buying certain property of defendant, suggested that he could get it for him cheaper than M. himself could, and obtained permission to make the attempt. He transmitted several offers of purchase to defendant, not disclosing the purchaser, but making them as if they came from himself. Defendant declined these offers, and plaintiff afterwards wrote withdrawing them and stating that they had been made on behalf of M.; but before the letter reached defendant, plaintiff telephoned to him that M. was coming to see him in regard to the purchase and not to forget to make the price to cover plaintiff's commission, whereupon defendant denied that he owed any commission. Defendant sold the property directly to M. *Held,* that in so doing defendant did not avail himself of a purchaser procured by plaintiff, nor of any services performed by plaintiff which were beneficial to him or which, when performed, he had any reason to believe were being performed with the expectation of compensation from him; and there was therefore no contract, express or implied, that defendant would pay for such services.

3. Evidence in such case that, after being notified that plaintiff
would look to him for a commission, defendant wrote to M.
that the latter must arrange the matter with plaintiff because
that was the agreement between defendant and M., and that
defendant also told plaintiff that M. had agreed when buying
the property that he would take care of the commission, did
not show the existence of a contract between plaintiff and de-
fendant with respect to a commission, but indicated only that
defendant, knowing of a claim for commission, was taking
steps to protect himself against such claim by inducing M. to
satisfy it.

4. A defendant who is discharged in the court below and is not
mentioned in a judgment against the other defendant, is not
affected by an appeal by such other defendant from that judg-
ment.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

The appeal is from a judgment affirming a judgment of
the civil court for $217.50 and costs in favor of the plaintiff.

*Paul D. Durant,* for the appellant, cited, among other
cases, *Terry v. Bartlett,* 153 Wis. 208, 140 N. W. 1133;
*Bowe v. Gage,* 132 Wis. 441, 112 N. W. 469; *McArthur v.
Slauson,* 53 Wis. 41, 9 N. W. 784; *Ames v. Lamont,* 107
Wis. 531, 83 N. W. 780; *Smith v. Kimball,* 193 Mass. 582,
79 N. E. 800; *Wood v. Smith,* 162 Mich. 334, 127 N. W.
277; *Wahl v. Tracy,* 139 Wis. 668, 671, 121 N. W. 660;
*Rees v. Pellow,* 97 Fed. 167, 175; *Ball v. Dolan,* 21 S.
Dak. 619, 114 N. W. 998, 15 L. R. A. N. s. 272; Mechem,
Agency, § 968; *Platt v. Johr,* 9 Ind. App. 58, 36 N. E.
294; *Sibbald v. Bethlehem I. Co.* 83 N. Y. 378, 38 Am.
Rep. 441.

*George H. Katz,* for the respondent, cited *Stewart v.
Mather,* 32 Wis. 344; *Donahue v. Padden,* 93 Wis. 20, 66
N. W. 804; *Orton v. Scofield,* 61 Wis. 382, 21 N. W. 261;
*Barry v. Schmidt,* 57 Wis. 172, 15 N. W. 24; *McKenzie v.
Lego,* 98 Wis. 364, 368–371, 74 N. W. 249; *Herman v.
Martineau,* 1 Wis. 151; *Tasse v. Kindt,* 125 Wis. 631, 104

N. W. 703; *S. C.* 145 Wis. 115, 128 N. W. 972; *Kilpinski v. Bishop,* 143 Wis. 390, 127 N. W. 974; *Oliver v. Katz,* 131 Wis. 409, 111 N. W. 509; *Meyer v. Hanchelt,* 43 Wis. 246, 249.

*James D. Foley,* for the defendant M. J. McCarthy.

TIMLIN, J.　In this case the plaintiff, *Adolph Segnitz,* a real-estate agent, had in his employment in said business his son Marc Segnitz and one Noll.　The defendant McCarthy was a patron or client of Noll.　The appellant, a corporation, owned a certain piece of property which it had in plaintiff's hands for sale, presumably on commission, but this agency was terminated and the property taken out of the plaintiff's hands in 1907, while the events on which liability is predicated in this cause occurred in 1912 and 1913. Mr. Grossenbach acted for the appellant and takes its place in the following statement.

In the civil court the defendant McCarthy was discharged and a jury found a general verdict against the appellant and in favor of the plaintiff.　On this verdict was rendered the judgment in question which the circuit court affirmed upon appeal.　It is contended that there was no evidence to support the recovery.　The evidence most favorable to the plaintiff and upon which the recovery rests is as follows: One day in the latter part of the year 1912 Noll observed McCarthy on the street looking at the property in question, and in the conversation which ensued McCarthy told him he contemplated buying it.　Noll asked McCarthy to let him handle the purchase of it for McCarthy, giving several argumentative reasons, principally that they could get it for McCarthy cheaper than McCarthy could.　The latter consented, and plaintiff, either personally or through his said employees, transmitted several offers of purchase to appellant, not disclosing who the purchaser was, but making the offers as if they came from plaintiff.　Appellant's asking

price was $8,000, the highest offer thus transmitted was $6,500. In the early part of December, 1912, Marc Segnitz approached the appellant with an offer to exchange certain property of *Segnitz* for the property in question, which offer the appellant refused. Marc Segnitz then said to appellant that he would try to get him a cash offer for the property in question, to which appellant either answered nothing at all or said "All right," Marc is not sure which. On December 14, 1912, the plaintiff, with the consent of McCarthy, wrote to appellant withdrawing these offers and informing appellant they were made in behalf of McCarthy. On December 14th, the same day that plaintiff wrote the letter withdrawing McCarthy's offers but before the letter had reached appellant, Marc Segnitz telephoned appellant that McCarthy was coming down to see appellant about this lot because McCarthy thought he could do better than they could, and Marc informed appellant to do the best he could to close with McCarthy and not to forget to make the price to cover plaintiff's commission. Appellant denied he owed them any commission and Marc said appellant knew they were real-estate brokers and that unless there was an agreement to the contrary there must be a commission paid. Appellant answered, "We will cross that bridge when we come to it."

This evidence, fairly weighed, does not tend to establish the existence of any express contract of agency or for a commission between respondent and appellant, but the contrary. The appellant repudiates the idea of a contract the moment it comes to his knowledge that the respondent is making any such claim and before appellant met the purchaser. The representative of the respondent in effect acquiesces by claiming an implied contract because they were real-estate agents. It is obvious that neither party to the alleged contract at this stage of the negotiations understood that any express contract existed. It is not claimed that any was thereafter made. In order to raise an implied contract to

pay for services several things are necessary which are lacking here. First, the services must have been performed under such circumstances as to give the recipient thereof some reason to think they are not gratuitous, not performed for some other person, but with the expectation of compensation from the recipient. That was not the case here. In fact, as shown, respondent performed the services of transmitting the offers for McCarthy; in appearance they were his own offers; in neither case would there be a suggestion of expectation of compensation from the appellant. Second, in order to raise an implied contract to compensate for them, the services must have been beneficial to the person sought to be made liable. Here the appellant received no benefit whatever from the services of respondent. The latter neither procured a purchaser nor made a sale. He merely intercepted a purchaser on his way to appellant and in effect said to the purchaser, let me bear your message. Respondent, apparently offering for himself, was in fact acting for McCarthy, but he did not so inform the appellant until the time he made claim for commission before the appellant had met McCarthy and while the latter was on his way to see appellant for the purpose of endeavoring to make the purchase he had intended to make before the *Segnitz* agency met him and requested to be allowed to make his offers for him. The respondent in this conversation plainly attempted to put a sort of tag or brand upon McCarthy so that appellant could not sell to McCarthy without becoming liable for respondent's commission. Never having procured McCarthy as a purchaser this attempt was futile. In selling to McCarthy the appellant did not avail itself of a purchaser procured by respondent nor of any services performed by respondent beneficial to appellant or which when performed the appellant had any reason to believe were performed with the expectation of compensation from appellant. All the rest of the evidence is in the nature of admissions and consists of (a) a letter notifying appellant that respondent will look to him

for commission; (b) a letter by appellant to McCarthy that the latter must arrange matters with Segnitz because appellant had an agreement with McCarthy that the latter should do so; (c) Marc Segnitz met appellant on the street after he had sent a bill for commission to appellant and asked appellant why he did not hear from him. The latter replied he had a verbal agreement with McCarthy that McCarthy would take care of the commission; that McCarthy bought the property under these conditions and for these reasons Segnitz could not expect that appellant would pay "your commission."

The foregoing admissions are denied in many important particulars. But assuming them to be true, taken in connection with the proof of what actually took place they fail to establish any contract on the part of appellant to pay a commission to respondent either by direct proof or permissible inference. After affirmatively proving that no contract express or implied existed, alleged admissions on appellant's part to the contrary establish nothing. As before stated, it requires something more than·the mere performance of voluntary services to create an implied contract to compensate for such services. This is the law even where the party performing such services is a real-estate agent. The alleged subsequent admissions or declarations of appellant really point, not to the existence of a contract between respondent and appellant, but to the fact that appellant knew of a claim for commission made by the respondent and was taking steps to protect himself against this claim by endeavoring to induce McCarthy to satisfy such claim.

McCarthy filed a brief in this case, but he was discharged in the court below, not mentioned in the judgment appealed from, and neither this appeal nor the disposition of it made by this court affects the ruling of the court below discharging him.

*By the Court.*—The judgment of the circuit court is reversed, with direction to dismiss the complaint.