LAMAR WARREN, Associate Judge.
This is an appeal from a summary judgment in favor of plaintiff and denying cross motion of defendant for summary judgment. The appellant was defendant below in an action to recover a broker’s commission.
The negotiations which formed the basis for the action were all contained in letters of correspondence between the parties. Plaintiff alleged that defendant had agreed to pay a commission on the purchase of a newspaper business and that defendant had refused to pay. Defendant admitted that he had purchaséd the business but denied that .he had engaged the services of plain *278 tiff, and that any services rendered were done so voluntarily and without consideration.
Plaintiff had been informed that defendant, then residing in Stockholm, Sweden, was interested in acquiring a newspaper business, and plaintiff by mail advised defendant of a listing he had. As shown by the exhibits attached to plaintiff’s motion for summary judgment, defendant replied-immediately and stated he was very interested and would appreciate any information about the paper, the place and other pertinent matters. Plaintiff again wrote defendant, naming the paper, its location and, after relating difficulties had in the past with the owner with respect to arranging the payment of a commission, commented that it was doubtful the owner would pay plaintiff a commission without legal action, and that “The only plan is for you to consider our commission of five percent in any price that you might agree on and it will be appreciated if you will send us a letter to that effect if it meets with your approval,” and suggested that defendant write the owner directly for further information.
Defendant replied shortly, noting his interest in the paper, its promise, and stated that he had asked his brother-in-law in Pennsylvania, a Mr. Ferguson, to contact the owner, and added that “To save time, it certainly would be of great help if you would contact Mr. Ferguson and give him some suggestions how to proceed. I am sorry to hear that your relations with Mr. Fraer have become somewhat strained but I am sure that any misunderstanding that may have arisen can be cleared up. Should we come so far as to a deal, I am sure that the price can be agreed in a way by which your help and work will be taken care of.” Thereafter plaintiff wrote Mr. Ferguson- and noted that the owner of the newspaper was elderly and ill and very difficult to do business with, recalling an unsatisfactory experience in the past over payment of a commission and, after making a suggestion of- approach, concluded the paragraph by saying “In any negotiations please keep in mind our commission of five per cent which would have to be paid by Mr. Lamborn. The above is an unusual situation and there is little question but that Mr. Fraer is ill.” Plaintiff, subsequently learning that defendant had purchased the paper, made demand for a commission of five per cent of the purchase price.
In his affidavit in support of a cross motion for summary judgment, defendant acknowledged the correspondence, but said that he at no time acquiesced or agreed to pay a commission to plaintiff and did not contract in any way with plaintiff or engage his services in and about the purchase; that subsequent to the correspondence with plaintiff, he proceeded to negotiate directly with the owner and that through his own efforts and those of his brother-in-law he effected the purchase; that subsequent to said correspondence plaintiff rendered no services to him or in his behalf and in no way assisted him, other than the initial furnishing of the name and location of the newspaper, together with certain plant equipment information.
The first question presented is whether defendant’s reply, namely “Should we come so far as to a deal, I am sure that the price can be agreed in a way by which your help and work will be taken care of,” constituted an implied promise to pay the broker’s commission; the second question is whether the subsequent actions on the part of the broker herein constituted consideration for the defendant’s prior implied promise to pay the broker his commission if the purchase were completed.
In discussing a broker’s contract of employment the following statement is made in 12 C.J.S. Brokers § 61:
“The contract of employment and agreement to pay commissions or other compensation, which must exist to entitle a broker to compensation for his services, may and must be either an express contract, containing or incor *279 porating the contractual elements of offer and acceptance and at the same time based on a sufficient consideration, or a contract implied from the facts and circumstances.
“To constitute an implied contract it is necessary and sufficient that the person from whom compensation is claimed consent to, or accept, the broker's services with knowledge or reasonable ground to believe that they are being rendered in his behalf, by the broker as such, with an expectation of receiving payment therefor. * * * ”
See also, 8 Am.Jur., Brokers, § 159.
Under the annotation “implied contract or employment of real estate brokers to procure customer,” it is noted in 43 A.L.R. 842 that the essential elements of an implied contract to pay a real estate broker for services rendered by him in procuring a purchaser for real estate were stated in Segnitz v. A. Grossenbach Co., 158 Wis. 511, 149 N.W. 159, 160, as follows:
“In order to raise an implied contract to pay for services several things are necessary. * * * First, the services must have been performed under such circumstances as to give the recipient thereof some reason to think they are not gratuitous, nor performed for some other person, but with the expectation of compensation from the recipient. * * * Second, in order to raise an implied contract to compensate for them, the services must have been beneficial to the person sought to be made liable.”
In the case of Annabil v. Traverse Land Co., 108 Minn. 37, 121 N.W. 233, 234, the following statement from Mechem on Agency, § 601, was quoted with approval by the court:
“If beneficial services are rendered for a person, under such circumstances as show that the agent expected to be paid for them as a matter of right, and the person for whom -they were rendered does nothing to disabuse him of his expectation, but permits him to render the services, the law will imply a promise to pay for them.”
The broker, in the case of City Builders’ Finance Co. v. Stahl, 90 Fla. 357, 106 So. 77, 78, who recovered a judgment in the lower court, was told by the seller’s agent to go ahead and make a sale, but nothing was said about a commission. In reversing the judgment, the court said:
“A commission contract for the voluntary services of a broker will not be implied unless the vendor knows or has reasonable grounds to believe that the services were rendered with the expectation of receiving payment therefor.”
While denying other allegations of the complaint, defendant admitted in his answer that he .requested the plaintiff to furnish him the names of weekly newspapers which were or might be available for sale, and that plaintiff furnished him with the name of The Winter Park Herald, together with certain information on the plant and office equipment; he admitted that plaintiff advised him that defendant would be expected to pay a commission of five per cent on the purchase price if the newspaper were acquired by him.
Defendant knew, by the correspondence, that the owner of the newspaper was eccentric and would be difficult to deal with and of the owner’s past refusal to pay plaintiff a commission; he knew that plaintiff was not acting for the owner in this transaction, and he knew that plaintiff was relying on him to pay the commission, for the matter of defendant’s obligation to pay the commission was raised at the beginning of the negotiations. Defendant’s response was to request further services from plaintiff and to confirm to plaintiff that if a deal were made he was sure that the price could be agreed upon in a way that plaintiff’s help and work would be taken care of. He did nothing *280 to disabuse defendant of his expectation of a commission; he accepted the services of plaintiff, and clearly they were beneficial to him. An implied contract to pay a commission was created.
The writings in Massachusetts Mut. Life Ins. Co. v. George & Co., 8 Cir., 148 F.2d 42, 46, are somewhat similar to those here. The broker inquired if the defendant’s manager of real estate desired to lease or possibly sell a hotel owned by it. Correspondence followed wherein the broker divulged the name of the prospect, asked for a quotation of price, and stated that if a price was quoted it should be on the basis of the broker receiving 2*4 per cent commission on the selling price. Negotiations continued and an inspection of the property was made. Again the broker asked for a price, and it to include a 2^2 per cent commission in event of sale. Never at any time, however, did the real estate manager refer in his correspondence to the commission, or did he quote a price. Judgment was entered upon a verdict in favor of plaintiff. On appeal it was argued that the defendant did not accept the offer to submit a price, did not accept the offer of the commission, did not submit any counter offers, and there was no meeting of the minds, everything being left open for future arrangement. The court said:
“Defendant’s argument misconceives the nature of the contract involved and the law applicable to such contracts. This was an offer to render a service as agent, to find a purchaser for real estate, ready, able and willing to buy, and to negotiate a sale with such purchaser on behalf of the owner on condition that the agent be paid 2y%% of the purchase price. The offer to find such a purchaser and to carry on such negotiations was accepted. The law is that, when an offer to render a service on conditions is made, an acceptance of the service is an acceptance of the conditions also. 17 C.J.S. Contracts § 36. The defendant could not accept the offer to render a service, offered on condition that it be paid for at a specified rate, and secretly reserve the right to negotiate for the value of the service at a future date, Blake v. Scott, 92 Ark. 46, 121 S.W. 1054, 1056, 123 S.W. 1181. Under the circumstances, the defendant is presumed to have accepted the offer subject only to fixing the price at an ‘opportune time’ in the future. Compare Wisconsin Steel Co. v. Maryland Steel Co., 7 Cir., 203 F. 403, 406; Zehr v. Wardall, supra [6 Cir., 134 F.2d 805]; Davidson v. Poague, 7 Cir., 263 F. 876. In Mr. Glenn’s letter of June-25, 1937 and other of the letters, the-defendant invited George and Company to submit the name of its client,, making but one reservation. That was a reservation to fix the price of the hotel in the future. When George and Company accepted the invitation to. submit the name of its client and proceeded to negotiate on condition that the price of the hotel would not be-submitted until the defendant considered the time opportune, it accepted the reservation and the contract was complete. All that remained to-be done to perform the contract was-for the defendant and the Schimmels to agree upon a price and to enter' into a contract of sale, and no time-limit was fixed for accomplishing that end.”
Of like interest is the decision in Kimbrough v. Smith, 201 Miss. 202, 28 So.2d 850, a Mississippi case.
Turning to the second question, defendant argued in his brief that the consideration to support his promise was insufficient, not what he bargained for, and of no benefit to him. The record shows that in the exchange of correspondence defendant knew of the limitation on plaintiff’s ability directly to participate in negotiations to bring about a deal. After knowing these circumstances he thereafter promised to pay a commission and at the same time requested plaintiff to perform *281 further services for his benefit. In his affidavit in support of his motion for summary judgment, plaintiff stated that defendant further requested that he write to plaintiff’s brother-in-law “and as defendant’s agent I thereafter kept myself in such a position as to assist defendant in gathering information relative to the operation of the newspaper and to assist him in successful negotiations with the owner toward the purchase of the newspaper.”
The law recognizes that it is immaterial whether there is any actual pecuniary loss to the promisee or actual pecuniary benefit to the promisor; inadequacy of consideration does not render it insufficient to support a promise. When plaintiff performed the services which defendant requested and thereafter held himself in position to further the negotiations, he furnished consideration to support defendant’s promise.
Affirmed.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.