No. 21568.

CONSOLIDATED OIL & GAS, INC., A CORPORATION *v.*
WILLIAM E. ROBERTS.
(425 P.2d 282)

Decided March 13, 1967.

150

Calkins, Kramer, Grimshaw & Carpenter, Richard L. Harring, for plaintiff in error.

Zarlengo, Zarlengo, Seavy and Mulligan, for defendant in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

THIS action involves a claim by defendant in error, an oil and gas property and lease broker, for payment of a "reasonable" commission or "finder's fee" allegedly owed him by plaintiff in error as a result of an oil company merger which he contends was brought about through his efforts. The case was tried to the court without a jury. The parties will be referred to as they were in the trial court, *i.e.*, plaintiff in error as Consolidated or defendant, and defendant in error as Roberts or plaintiff.

On February 2, 1962, Roberts filed his complaint and after trial the court found in his favor and awarded him $30,000; it found that the minimum value of Consolidated's acquisition as a result of the merger was $1,000,000 and that a reasonable commission due Roberts for his services would be 3% of this figure.

Defendant urges several assignments of error, which we summarize as follows:

(1) That it was error to award a judgment on a contract claim without a specific finding that a contract existed;

(2) That Roberts did not prove that he was the efficient agent or procuring cause of the transaction;

(3) That it was error to admit into evidence a letter from Trueblood's secretary offering Roberts $1,000 for his services as this was inadmissible as an offer of compromise; and,

(4) Consolidated contends that the findings of the lower court are not supported by the evidence.

The record discloses that plaintiff Roberts was engaged in the oil and gas business as a broker who located or acquired various oil and gas properties and presented them for purchase to interested customers. He was acquainted with Harry Trueblood, Jr. and Saul Levine, both officers and directors of Consolidated. Roberts knew that Consolidated was interested in acquiring companies in the oil and gas business. Early in 1959 Roberts and others presented a possible Oklahoma

(Ringwood) oil deal to Consolidated on a 5% commission basis which commission was not set until that transaction "was down to the wire"; the sale, however, fell through when the property was sold to another buyer. In August of 1959, about 60 days after the Ringwood matter was terminated, Roberts contacted Trueblood and Levine with respect to a Wyoming oil and gas corporation called Midland Oil Company. He said Midland (then unnamed by him) was available for a merger. He was asked to obtain pertinent engineering and financial data and submit it to Consolidated. Plaintiff then traveled to Greeley and Fort Collins, Colorado, for financial statements and to Casper, Wyoming, for engineering reports. In doing so he met with both the president of Midland and its principal stockholder, Fred Goodstein of Casper. Plaintiff then disclosed his prospect's name to Consolidated and gave it the data.

After receiving the reports from Roberts, Trueblood and Levine met with Goodstein to discuss the merger, but nothing was agreed upon at the time because Goodstein wanted cash for his individual stock. From that date on Consolidated never asked Roberts to perform any further act in connection with the transaction; however, Roberts testified that he asked officials of Consolidated several times how the matter was coming and was always informed that it was still in the negotiation stage. In this connection, we note that Levine was deceased by the time of the trial but that Trueblood testified that he met Roberts once thereafter and told him he was sorry the deal didn't go through. A separate disinterested oil broker witness, however, later said that Trueblood, after asking if he were in on the sale with Roberts (which he was not as he had been on the Ringwood matter), told him "it's too bad; he sure is going to make a bundle off of the thing." In any event, the record discloses that in the fall of 1960, after Goodstein had called his stockbroker Robert Strauss in Chicago about selling to Consolidated, Strauss contacted

Consolidated and a merger was accomplished in early 1961 by means of Consolidated issuing its stock to the public stockholders of Midland and using cash acquired from Midland to purchase the shares of Goodstein. This resulted, as Trueblood testified, in closing the deal basically as Goodstein had proposed at his first meeting with Consolidated when Roberts first brought the deal to Consolidated. Strauss testified that his brokerage company received a commission of five cents a share on the 520,000 shares of stock involved for a total of $26,000.

The first indication that Roberts had of the closing was when, as a stockholder, he received notice from Consolidated that the purchase had been consummated. Plaintiff then called Trueblood several times but could not reach him. He finally visited Consolidated's office where he demanded his commission. Trueblood refused the demand stating that Consolidated had already paid Strauss, but that he would think about it. Later Roberts wrote Consolidated a letter demanding a reasonable commission. This was followed by a reply letter from Trueblood's secretary, written at the latter's direction, which reads as follows:

"* * * *

"July 27, 1961
Mr. William E. Roberts
211 C. A. Johnson Building
Denver 2, Colorado
"Dear Mr. Roberts:
"Reference is made to your letter of July 17, 1961, concerning an equitable commission for your services in connection with bringing Midland Oil Company to Consolidated for a possible merger.
"Mr. Trueblood regrets the delayed response to your letter but he is now in the office only a couple of hours a day. However, please be advised that he has considered this matter for sometime and proposes $1,000.00 cash

commission in consideration for your services regarding the merger.

> Yours very truly,
> CONSOLIDATED OIL & GAS, INC.
> s/ Lynn Manley
>    Secretary to
> Harry A. Trueblood, Jr.,
> President"

Roberts refused the $1,000 offer by Consolidated and brought suit alleging that the value of the assets received by Consolidated justified a reasonable commission of $50,000. This was based upon a demonstrated value in the evidence of over $1,000,000 in total assets received by the buyer and Roberts' later evidence that the usual commission on a sale of up to one million dollars was 5%, although it might go from 3% to 15% with a scaled reduction on sales over one million dollars. Also, Roberts' testimony was that when he attempted to discuss a fee with Trueblood and Levine, he was told that he would be paid a "reasonable" commission, but they would not then set an amount. It appears that such was a customary procedure in the trade, *i.e.*, to wait and see what the final negotiations were between the buyer and seller, and that a finder did not customarily participate in evaluating the properties or in the bargaining as to price.

We note that Consolidated's evidence was to the effect that there was no standard commission in the oil and gas brokerage business or as to finder's fees; that each deal stood on its own — thus creating a conflict as to *usualness* but not as to what was reasonable here, nor as to whether a commission was in fact due. As to the latter, the defendant's position was that though admittedly Roberts brought it the prospect and gave it the initial engineering and financial data, nevertheless, the deal failed; and it is asserted that the acquisition of Midland later through Strauss does not make the defendant liable for a commission to Roberts.

I.

We turn now to Consolidated's first ground for reversal, viz., that it was error for the trial court to award a judgment on a contract claim without a specific finding that a contract existed.

In this regard, the trial court's written "Amended Findings Of Fact, Conclusions Of Law, Judgment And Decree" generally recited the facts set forth above in this opinion and then found

"* * * that in the oil and gas industry each case of a broker's fee is based on the particular facts of the transaction; that in some cases the fee is agreed upon prior to any attempt at consummation and in some instances it is paid after the consummation without written or oral agreement. * * * The Court finds, as a fact that in this type of transaction the staff of the purchasing company evaluates the worth of the proposed seller and the officers of the purchasing company negotiate the transaction, and the broker does not participate unless requested to do so."

Next, the Court held that the letter from Consolidated to Roberts was an admission that the latter had performed services in the instant case and "is also an admission that the plaintiff is entitled to a fee. The Court also concludes that the plaintiff is entitled to a fee * * *," which it then set at 3% as being "reasonable."

In our view the above wording adequately shows that the Court found that an implied contract was entered into and that the services rendered had to be paid for on a *quantum meruit* basis which the Court then found was $30,000.

It has long been the law in Colorado that a contract between a principal and his agent or broker may be oral or may even be implied from the circumstances of the case. *Brewer v. Williams*, 147 Colo. 146, 150, 362 P.2d 1033 (1961); *Klipfel v. Bowes*, 108 Colo. 583, 586, 120 P.2d 959 (1942). The circumstances from which such a contract may be implied seem to be two:

first, that the broker or agent has rendered services, and is permitted to do so in such a manner as to indicate that he expected to be paid for these services; and second, that the services are beneficial to the party sought to be made liable. *Schimmelpfennig v. Gaedke,* 223 Minn. 542, 27 N.W.2d 416, 420 (1947); *Segnitz v. Grossenbach,* 158 Wis. 511, 149 N.W. 159, 160 (1914). This record shows that both of these prerequisites were present here and that an implied contract existed between the parties for defendant to pay a reasonable commission — thus creating a condition where Roberts was entitled to recover as a matter of law on a *quantum meruit* basis.

## II.

As to the assertion that Roberts did not prove that he was the efficient agent or procuring cause of the transaction, it is apparent from the facts in this case and the trial court's findings (all of which are amply supported by the evidence), that there is no merit to such a contention. The custom and usage in the oil and gas industry in regard to brokers and finders are spelled out in great detail by this record. The usual type of broker's commission case in the regulated real estate business in Colorado, as is urged by the defendant, is not necessarily in point here. For example, oil and gas brokers do not evaluate the properties, nor do they necessarily enter into the negotiations or consummate the transaction, *i.e.,* handle the closing. Such brokers' or finders' principal activities and services are to locate a property or lease, bring it to the attention of a prospective buyer and thereafter to obtain requested data if possible. He is then only paid a commission if the property is actually acquired by his prospect. Cases such as *Heady v. Tomlinson,* 134 Colo. 33, 37, 299 P.2d 120 (1956) and *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882 (1891) relied on by the defendant, are not applicable here, for this is not the type of transaction where a broker, at the initial contact, produces a ready,

willing and able buyer who purchases the property upon the terms and at a price then designated by the principal. Those cases though do stand for the proposition, which is applicable here, that the broker must be the efficient agent or procuring cause of the sale. On the other hand, Colorado has recognized that even in the general real estate business, agreements may occur in which the broker is merely to produce a purchaser. *E.g., Wade v. Nowels*, 78 Colo. 585, 587, 243 Pac. 542 (1926); *Donley v. Bailey*, 48 Colo. 373, 378, 110 Pac. 65 (1910).

We discussed the rights of a so-called "finder" in *George v. Dower*, 125 Colo. 45, 55, 62, 240 P.2d 897 (1952) to the effect that he who is entitled to the commission is the one who sets the chain of events in motion which result in the sale.

The law is that the right of a broker to recover a commission is dependent upon the terms of the agreement and the performance expected of him. *Scott v. Huntzinger*, 148 Colo. 225, 227, 365 P.2d 692 (1961). The measure of performance of an oil and gas broker or finder would seem to require only that he present a property available for acquisition and then procure any requested information needed to evaluate the property. His compensation is dependent upon the subsequent purchase, but not upon his efforts toward accomplishing the purchase. See *Knauss v. Gottfried Krueger Brewing Co.*, 142 N.Y. 70, 36 N.E. 867 (1894) and *Restatement, Agency 2d* § 448, Comment (b).

Here it is undisputed that Roberts first brought Midland Oil Company and its officers to the attention of Consolidated and did all that was required of him by Consolidated in gathering data for evaluation. It also is undisputed that Consolidated thereafter acquired Midland by merger.

### III.

The third ground for reversal is that defendant's letter to Roberts (Exhibit B) was inadmissible

because defendant asserts it was an offer to compromise. It requires no citation of authority that true offers of compromise are not admissible as evidence of liability of the offeror. Before commenting in detail on this issue, we point out that a reading of the entire record in this case discloses overwhelming evidence, without the use of the letter in question, that a reasonable commission is due Roberts under the facts presented.

It is admitted by Consolidated that at one time it offered to pay something but it asserts this was limited to $1,000 and was by way of a compromise. It is the latter issue that it now seeks to prove by extrinsic evidence of its intention as to why it wrote the letter. We need not pass on that point, however, because as was stated in *Kutcher v. Love*, 19 Colo. 542, 36 Pac. 152 (1894):

"* * * Although the policy of the law favors amicable settlements of controversies and therefore prohibits evidence of negotiations made by a party for the purpose of buying his peace, when during negotiations for a compromise a fact is conceded as in this instance without reservation, evidence of such admission is competent against the party. (Authorities cited.)"

And, the question of whether a statement is an offer of compromise or an admission of liability is "* * * one of fact, to be determined by the court or by a jury * * *." *Donley v. Bailey, supra. Donley* was also a case of a direct and unqualified admission by a defendant of actual liability, and this Court refused to disturb a finding of fact holding that there was no offer to compromise in that case even though

"* * * It is true that the defendant denied the testimony on behalf of the plaintiff and said that he expressly denied liability but offered to pay $250.00 by way of compromise to avoid litigation."

The court pointed out that such a condition only created a conflict in the evidence. It is also interesting to note that in *Donley* the defendant had to pay, even though

he leased his property to the plaintiff's prospect after he had listed it with plaintiff for sale; the contract being one only for procuring a purchaser upon terms satisfactory to the seller. The Court in *Brown v. Hebb*, 167 Md. 535, 175 Atl. 602, 608 (1934) points out that in the case of such admissions only the question of value is left for determination. We agree with the trial court that there is no indication in this document that it was intended as an offer of compromise, and we therefore hold that it was properly admitted into evidence.

## IV.

Defendant's fourth ground for reversal is that the findings of fact are not supported by the evidence. In *Saunders v. Spina*, 140 Colo. 317, 320, 344 P.2d 469 (1959) we reiterated the standard set forth in *Bishop v. Moore*, 137 Colo. 263, 323 P.2d 897 (1958) by which such an issue should be resolved. There we said:

"Where a case is tried to the court, and the evidence is conflicting, the findings of fact are conclusive in the appellate court, unless they are so manifestly against the weight of the evidence as to demonstrate some oversight or mistake on the part of the trial judge."

The case before us demonstrates pervasively no such oversight or mistake. There is clear and convincing evidence to support each finding of fact made by the trial court. There is no dispute at all as to the essential skeletal portions of the evidence. The only real conflicts appear to be as to the pieces of raiment to cover it; for example, as to whether there was a standard 5% commission in a case such as this, or whether defendant's officers told Roberts the deal was off (when in fact it was very much on). Clearly, no dispute existed as to the following facts: that Roberts brought Consolidated the deal; furnished all requested financial and engineering data; that a deal was made for a value in excess of that found by the trial court as the minimum; and that Goodstein, after being put in touch with defendant by

Roberts, later dealt with the defendant through Strauss. The judgment is affirmed.