Jo HAYES, also known as Josephine M. Hayes, Plaintiff-Appellee,

v.

NORTH TABLE MOUNTAIN CORP., a Colorado Corporation, Defendant-Appellant.

No. 78–773.

Colorado Court of Appeals, Div. II.

Dec. 20, 1979.

Rehearing Denied Jan. 17, 1980.

Certiorari Denied March 31, 1980.

Lutz & Gilbert, Harold D. Lutz, Arvada, for plaintiff-appellee.

Deisch & Marion, P. C., Michael B. Marion, Denver, for defendant-appellant.

RULAND, Judge.

North Table Mountain Corp. appeals from the judgment entered upon a jury verdict of $68,460, plus costs, awarded to Jo Hayes as a commission for the sale of real estate. We affirm.

The evidence presented by the parties was in sharp conflict. However, if the evidence is viewed in a light most favorable to the verdict, as must be done, *see J & K*

*Construction Co. v. Molton*, 154 Colo. 214, 390 P.2d 68 (1964), the record reflects that in May of 1971, Hayes, a licensed real estate broker, contacted Herbert Young, president of North Table, concerning the possibility of acquiring a tract of land for Western Paving Corporation. Western Paving was seeking an additional source for road paving material, and Hayes was aware that North Table was one of only a few landowners who might have land suitable for a quarry site.

Hayes told Young, by phone, that Western Paving was willing to spend approximately $3,500 an acre, up to a total of $1,000,000, to acquire the land, and Young invited Hayes and representatives of Western Paving to accompany him to view available land. Western Paving was shown both the land owned by North Table, and a second tract which North Table at that time did not own, but was attempting to purchase.

A second meeting between Young, Hayes, and Western Paving was held approximately one week later to discuss other possible locations and access problems for the gravel trucks.

During the next several months, Hayes acted as a general intermediary between the parties. She coordinated talks on a lease versus sale arrangement, searched for access routes, and talked to other landowners on behalf of Western Paving. Hayes also kept Western Paving apprised as to the closing date on North Table's purchase of the second tract of land.

Hayes also requested that North Table execute a written listing covering the sale of any land by North Table to Western Paving, but Young refused. As a result, Hayes wrote a letter dated June 23, 1971, to North Table, claiming entitlement to a 6% commission "on the total purchase price of all rock or real property sold to Western Paving," based upon an oral contract.

In response, Young came to Hayes' residence to discuss the matter. The two parties argued over the amount of the commission, but Young finally agreed to pay a 6% commission in the event of a sale.

On September 15, 1971, North Table was finally successful in purchasing land adjacent to its own property, and on January 28, 1972, entered into an option agreement with Western Paving for the sale of a portion of that tract. Upon learning of the option contract, Hayes wrote North Table a second letter, outlining her claim for commission in the event Western Paving exercised its option. In response, Young once again visited Hayes at her home, and made several statements consistent with the existence of a contract. On April 13, 1973, Western Paving exercised the option. North Table, however, refused to pay any part of a commission when requested to do so, claiming that no listing contract ever existed. Hayes then initiated this action.

North Table first contends that because the property to be sold was not specifically identified, the selling price was not stated, and the terms and conditions of the sale were not described, the listing contract was so lacking in certainty as to be unenforceable. This contention lacks merit.

■ Oral listing contracts for the sale of real estate are valid, and may be implied from surrounding circumstances. *Consolidated Oil & Gas, Inc. v. Roberts*, 162 Colo. 149, 425 P.2d 282 (1967). And, whether the terms of a contract are sufficiently definite in any given circumstance depends, to a large extent, on the purpose of the contract, and the relations between the parties involved. *See Marcor Housing Systems, Inc. v. First American Title Co.*, 41 Colo.App. 90, 584 P.2d 86 (1978), *aff'd in part, rev'd in part on other grounds, sub. nom., O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.*, 195 Colo. 679 (1979). Here, the jury was obviously persuaded that the property involved was any property sold by North Table to Western Paving for a price and upon terms acceptable to North Table. Because the record contains sufficient, although disputed, evidence to support the jury finding, its verdict may not be disturbed on appeal.

North Table next contends that the two letters written by Hayes should not have

been admitted because they were "self-serving declarations." We disagree.

■ The letters, when viewed in conjunction with the visits made to Hayes' home, where the contract was made, constituted a series of communications between the parties relative to their contract. As stated in *D. Binder, The Hearsay Handbook*, p. 9 of 1979 Cum.Supp.:

"Contracts are based on words, regardless of their truth. Therefore, to prove a contract, a party must offer evidence of words that were spoken or written. Testimony from a person who heard such words is not hearsay."

Thus, the letters were properly admitted in evidence. *See National Labor Relations Board v. H. Koch & Sons*, 578 F.2d 1287 (9th Cir. 1978); *see also Farrer v. Caster*, 17 Colo.App. 41, 67 P. 171 (1901).

North Table contends that the trial court erred in entering a judgment for Hayes because Hayes failed to prove that Young was authorized to enter into a listing by North Table. We also reject this contention.

■ While Young testified that he had no such authority, other evidence tended to establish that he had apparent authority to act for the corporation in entering into the listing. Under these circumstances, the question of Young's authority was a question of fact for resolution by the jury. *See Heatherridge Management Co. v. Benson*, 192 Colo. 190, 558 P.2d 435 (1976); *see also Zambruk v. Perlmutter 3rd Generation Builders, Inc.*, 32 Colo.App. 276, 510 P.2d 472 (1973). And, North Table failed to tender an instruction on this issue. *See Caldwell v. Kats*, 193 Colo. 384, 567 P.2d 371 (1977).

We have considered North Table's contentions that the trial court erred in refusing to give its tendered instructions, and conclude that the jury was properly instructed as to the legal requirements for recovery of a commission and that the instructions tendered by North Table were not relevant to the issues presented. *See Dolan v. Mitchell*, 179 Colo. 359, 502 P.2d 72 (1972).

North Table's next argument is that interest on the commission should not have been assessed by the trial court but rather should have been proved as a part of Hayes' case during presentation of evidence to the jury. We disagree.

■ The right to interest for a liquidated sum where there is no express agreement as to the rate thereof is governed by § 5–12–102, C.R.S. 1973. Here, based on the oral contract, the commission due Hayes fell within the statute, and interest on the commission became due as a matter of law when Western Paving exercised its option. *Donley v. Bailey*, 48 Colo. 373, 110 P. 65 (1910). Therefore, the entitlement to interest was not a jury question and interest was properly assessed by the court. *Samuels v. California Insurance Co.*, 192 Pa.Super. 484, 162 A.2d 48 (1960); *Worthington Corp. v. El Chicote Ranch Properties, Ltd.*, 255 Cal. App.2d 316, 63 Cal.Rptr. 203 (1967).

We have considered North Table's other contentions as to the trial court's rulings, and find either that they lack merit, or, if error, do not warrant reversal.

Judgment affirmed.

SILVERSTEIN and STERNBERG, JJ., concur.