Stanley SALL, Mary Lynne Sall and Larry D. Sall, Plaintiffs,

v.

**G.H. MILLER & COMPANY,**
**Defendant.**

Civ. A. No. 84-C-1641.

United States District Court,
D. Colorado.

July 8, 1985.

John F. Head, Denver, Colo., for plaintiffs.

Cassandra Sasso, Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

This case arises from certain transactions in commodity futures contracts which the plaintiffs, Stanley Sall, Mary Lynne Sall, and Larry D. Sall, effected through the Colorado Springs brokerage office of the defendant, G.H. Miller & Co. The complaint contains fifteen claims for relief in

which the three plaintiffs assert theories of breach of fiduciary duty, fraudulent concealment, constructive fraud, negligent supervision, breach of contract, and violation of § 4b of the Commodity Exchange Act 7 U.S.C. § 6b. Defendant has moved to dismiss and to strike or, in the alternative, to transfer this action to the Northern District of Illinois. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1332. The parties have briefed the issues, and oral argument would not assist in resolving them.

The undisputed facts are that sometime after March 1, 1983, the plaintiffs began to trade in commodity futures contracts through the defendant. Two of the three plaintiffs, Stanley Sall and Mary Lynne Sall, signed a form contract drafted by the defendant and entitled "G.H. Miller & Co. Customer's Agreement." The third plaintiff, Larry D. Sall, apparently never signed such a document but traded through the defendant nonetheless. Following a series of transactions in which the plaintiffs allegedly lost money, they filed this action on August 21, 1984.

## I. *Motion to Transfer.*

Defendant's motion to transfer must be addressed first, for if it is granted, the transferee court should decide the substantive issues. Defendant's transfer motion is based on a clause in the form contract signed by Stanley and Mary Lynne Sall that states:

"The provisions of this Agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by, the laws of the State of Illinois. I specifically consent to and submit to the jurisdiction of the courts of the State of Illinois for the purpose of adjudicating any and all disputes which may arise with you hereunder."

Defendant does not contend that Larry D. Sall ever signed the form contract containing this language but argues nevertheless that this clause requires transfer of the entire action to the Northern District of Illinois. Plaintiffs, on the other hand, argue that a forum-selection clause should be enforced only if reasonable, citing *The Bre-*

*men v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). They contend that this clause is mere boiler-plate not to be given effect.

The motion to transfer must be denied because it appears from the plain language of the clause at issue that it is merely a consent to jurisdiction and does not require transfer. If an action is brought in Illinois, the parties cannot contest that state's jurisdiction. The clause does not purport to confer exclusive jurisdiction on the Illinois courts nor does it purport to require that actions brought elsewhere be transferred. The defendant's motion to transfer is denied.

## II. *Motion to Dismiss Commodity Exchange Act Claims.*

Defendant moves, under Fed.R.Civ.P. 12(b)(6), to dismiss the plaintiffs' Fourth, Ninth, and Fifteenth Claims for Relief which seek recovery on behalf of the three plaintiffs for violation of § 4b of the Commodity Exchange Act (CEA), 7 U.S.C. § 6b. That statute declares:

"It shall be unlawful

(1) *for any member of a contract market,* or for any correspondent, agent, or employee of any member, *in or in connection with any order to make,* or the making of, *any contract of sale of any commodity* in interstate commerce, *made,* or to be made, on or subject to the rules of any contract market, *for or on behalf of any other person,*

or

(2) *for any person* in or *in connection with any order to make,* or the making of, *any contract of sale of any commodity for future delivery,* made, or to be made, on or subject to the rules of any contract market, for or *on behalf of any other person if such contract for future delivery is or may be used for*

(a) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or

(b) determining the price basis of any transaction in interstate commerce in such commodity, or

(c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) *to cheat or defraud or attempt to cheat or defraud such other person* ...." (Emphasis added).

The Fourth Claim for Relief, asserted on behalf of Stanley Sall, alleges that the defendant is guilty of constructive fraud and breach of fiduciary duty in violation of § 4b. The incorporated factual allegations state that the defendant's agents failed to inform Mr. Sall that he should not leave the country while he was "long four silver contracts," and that the defendant's agents also failed to inform Stanley Sall's son, Larry D. Sall, of movement in the silver market during Stanley Sall's absence, despite instructions to do so.

In the Ninth Claim, asserted on behalf of Mary Lynne Sall, it is again alleged that breach of fiduciary duty and constructive fraud constitute violations of § 4b. The incorporated factual allegations are that the defendant allowed Mary Lynne Sall's account to lose over $10,000 despite her instruction that the maximum loss she was willing to suffer was $3,000.

In the Fifteenth Claim, asserted on behalf of Larry D. Sall, the allegation is once more that the defendant's breach of fiduciary duty and constructive fraud are violations of § 4b. The factual allegations relevant to this claim are that the defendant "failed to disclose or concealed" the following facts:

"(a) An adequate disclosure of the risk of the speculative trading of commodity futures contracts in light of Larry D. Sall's limited liquid assets, his limited experience in trading commodity futures contracts, and his lack of experience in investments generally.

(b) That Larry D. Sall was unsuitable to trade commodity futures contracts."

Defendant argues that I am required to dismiss these claims by the 10th Circuit precedent in *Master Commodities, Inc. v. Texas Cattle Management Co.*, 586 F.2d 1352 (10th Cir.1978). There, the plaintiff argued that the defendant had violated § 4b by failing to notify the plaintiff of trades in its futures account. The claim was based on a duty to notify specified in the regulations promulgated under the CEA and in the rules of the Chicago Mercantile Exchange. The 10th Circuit held that the trial court's judgment, to the extent it rested on an implied right of action under the CEA, the regulations, or the Exchange Rules, was not sufficiently supported by the evidence because the plaintiff had failed to show any "willful or fraudulent conduct" on the part of the defendant. Defendant in the instant case argues that the plaintiffs' constructive fraud theories are based on nothing more than mere negligence, rather than willful or fraudulent acts, and therefore the CEA claims must be dismissed.

Plaintiffs do not attempt to distinguish *Master Commodities* but instead point to the later, well-reasoned opinion of the Commodity Futures Trading Commission ("CFTC" or "Commission") in *Gordon v. Shearson Hayden Stone Inc.*, Comm.Fut. L.Rep. (CCH) para. 21,016 (CFTC 1980), *aff'd sub nom. Shearson Loeb Rhoades, Inc. v. C.F.T.C.*, 673 F.2d 1339 (9th Cir. 1982). There, the plaintiff filed a reparation complaint with the Commission alleging that the defendants had negligently failed to inform her of the risks involved in a futures trading program that the defendants had recommended to her. Plaintiff there argued that a fiduciary duty arose between her and the defendants and that their failure to disclose material facts amounted to constructive fraud. She further argued that constructive fraud was within § 4b's prohibition of acts which "defraud" another person. The Commission concluded that Congress intended that constructive fraud, even if based on negligence, be included in the prohibitions of § 4b.

■ A cursory reading may indicate a seeming conflict between the 10th Circuit opinion in *Master Commodities* and the CFTC opinion in *Gordon*. Nevertheless,

close analysis reveals that *Master Commodities* clearly is distinguishable from the instant case. *Master Commodities* arose before 1982, when Congress, by enacting 7 U.S.C. § 25, expressly granted a private right of action under the CEA. In *Master Commodities,* the court obviously was reluctant to recognize an implied right of action and was concerned that any such right be narrowly limited. Thus the court stated, "We hold that *if a right of action is to be implied under 7 U.S.C. § 6b,* willful or fraudulent action is required for recovery." 586 F.2d at 1356. (Emphasis added.) The other cases cited by the defendant in support of the 10th Circuit position also arose prior to the 1982 enactment. Courts are understandably reluctant to recognize expansive private causes of action without express statutory authority.

*Gordon,* on the other hand, was decided by a Commission free of any concern about having to imply a right of action. The CEA expressly grants the CFTC jurisdiction to hear cases involving violations of § 4b. *See* 7 U.S.C. § 18. The CFTC's task was merely to interpret the term "defraud." In *Gordon,* the CFTC reviewed in detail the language and legislative history of § 4b and the purposes underlying the CEA's fraud provisions. Dealing first with the statutory language, the Commission noted that at the time § 4b was drafted, the common law concept of fraud included both actual and constructive fraud. The commission further noted that by its terms, § 4b applies only to agents, who by law are fiduciaries. "[W]hen Congress prohibits 'fraud' in the context of remedial legislation applicable to fiduciaries, it is presumed that Congress has adopted the flexible legal principles of fraud, including constructive fraud." *Gordon* at 23, 977, citing *S.E.C. v. Capital Gains Bureau,* 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963).

■ Interpretation of § 4b to cover constructive fraud is consistent with the structure of the statute, as the Commission noted:

"Section 4b distinguishes the broad prohibition 'to defraud' in subsection 4b(A) from the prohibitions in subsections 4b(B), (C), and (D) which make unlawful certain modes of 'willful' or 'knowing' conduct. These subsections make it unlawful *'willfully* to make or cause to be made ... any false report or statement ...' (Section 4b(B) ); *'willfully* to deceive or attempt to deceive ...' (Section 4b(D) ); and *'willfully* and *knowingly'* to take, without consent, the opposite side of a customer's trades (Section 4b(D) ).... It is a well-established canon of statutory construction that when a word is included in one section of a statute and omitted in another section, it should not be implied in the section where it has been omitted. Applying this canon to Section 4b, it is our view that Congress, by failing to include either 'willfully' or 'knowingly' in Section 4b(A), specifically intended to omit intent as an element of a violation of the proscription 'to defraud' in that Section." *Gordon* at 23,977 (emphasis in original).

The Commission in *Gordon* also delved extensively into the legislative history behind the CEA. It appears that Congress originally drafted a statute that would have made it unlawful "knowingly and with intent to defraud any person, to fail truly, fully, and correctly to account to such person, or to cheat or defraud or attempt to cheat or defraud any person in any manner whatsoever...." H.R. 7608, 72nd Cong., 1st Sess., § 4a (January 13, 1932). See *Gordon* at 23,978. The absence of this language from § 4b as later enacted is persuasive evidence that Congress did not intend § 4b(A) to cover only actions taken with intent to defraud.

Finally, the Commission noted that their construction of § 4b was entirely in accord with the purposes behind the CEA.

"[O]ur construction of Section 4b(A) is also compelled by the congressional purpose underlying Section 4b. Congress enacted a broad federal antifraud provision to protect the rights of customers as fully as possible. Section 4b was designed as a supplement to state law remedies, which included constructive fraud, because these remedies had proven to be

inadequate to protect commodities customers. It would be repugnant to Congress' intent to interpret the prohibition 'to defraud' in Section 4b(A) more restrictively than the principles of constructive fraud which courts were then applying in the context of a breach of a fiduciary duty." *Gordon* at 23,979.

■ In summary, I find the analysis of the CFTC in *Gordon* highly persuasive and conclude that on the facts of the instant case, the 10th Circuit Court of Appeals would adopt that analysis. I further conclude that the plaintiffs have adequately stated a claim for violation of § 4b. Therefore, the defendant's motion to dismiss the Fourth, Ninth, and Fifteenth Claims for Relief is denied.

### III. *Motion to Dismiss State Claims.*

■ Defendant argues that all of the plaintiffs' state law claims must be dismissed because they are preempted by the CEA and its amendments. This argument is based primarily on § 22 of the Futures Trading Act of 1982, 7 U.S.C. § 25 which amended the CEA to allow individuals to bring damage actions for violations of. its provisions. The statute further states the following:

"Except as provided in subsection (b), the rights of action authorized by this subsection and by sections 5a(11), 14, and 17b(10) of this Act [7 U.S.C. §§ 7a(11), 19, and 21(10)] shall be the exclusive remedies under this Act [7 U.S.C. §§ 1 *et seq.*] available to any person who sustains loss as a result of any alleged violation of this Act." 7 U.S.C. § 25(a)(2)

In determining whether the plaintiffs' state law claims are preempted, I am governed by the following standards:

"Absent explicit preemptive language, Congress' intent to supercede state law altogether may be found from a 'scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it,' 'because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of the

state laws on the subject,' or because 'the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal the same purpose.'" *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983) quoting *Fidelity Federal Savings and Loan Assn. v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) and *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Nothing in the Commodity Futures Trading Act or the CEA deals expressly with the preemption issue, and therefore I must attempt to discern Congress's intent from the legislative framework and history. While the regulatory scheme envisioned by the CEA and its amendments is comprehensive, I cannot conclude that it is "so pervasive as to make reasonable the inference that Congress left no room to supplement it." The legislative history of the CEA and its amendments clearly evinces an intent to preempt state *regulation* of commodities markets but not to preempt all state common law remedies. *See Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379 (S.D.N.Y.1983); *Witzel v. Chartered Systems Corp. of New York, Ltd.*, 490 F.Supp. 343 (D.Minn.1980); Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy*, 29 Vand.L.Rev. 1 (1976).

The legislative history of the Futures Trading Act suggests that the particular clause at issue was not intended to change the settled law that state common law remedies are not preempted but rather was intended to limit the newly-created federal private right of action. Congress evidently wanted to make clear that violations *of the Act* could be redressed only through the procedures specified in the Act. It did not intend to extinguish state common law claims that do not arise from the Act. *See Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281 (8th Cir.1984) (holding the CEA does not preempt punitive damages

for common law fraud in commodities cases.)

Of course, it is possible that a particular state common law claim may be inconsistent with the regulatory scheme of the CEA and its amendments. The parties may file appropriate motions attacking particular claims on that basis. It is ordered that the defendant's present motion to dismiss the plaintiffs' state common law claims is denied.

### IV. *Motion to Strike Paragraphs which Request Punitive Damages under the CEA.*

Defendant has moved to strike paragraphs 35, 36, 72, 73, 116, and 117 of the complaint, all of which seek punitive damages for violation of § 4b of the CEA, 7 U.S.C. § 6b. Defendant argues that punitive damages are not recoverable under the CEA. Plaintiff apparently agrees. Therefore, the motion to strike these paragraphs is granted.

### V. *Motion to Strike Paragraphs Predicated Upon Colorado Law.*

Defendant further moves to strike paragraphs 15, 16, 22, 23, 30, 31, 52, 53, 59, 60, 67, 68, 90, 91, 96, 97, 103, 104, 111 and 112 of the complaint on the ground that they are predicated on Colorado law and that Illinois law governs this action. The motion is based on the clause in the contracts signed by Stanley Sall and Mary Lynne Sall which states "The provisions of this Agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by, the laws of the State of Illinois." The paragraphs objected to request punitive damages based on the Colorado statute governing such damages, Colo.Rev. Stat. § 13–21–102 (1973).

Defendant's motion as it applies to the paragraphs seeking punitive damages on behalf of Larry D. Sall, §§ 96, 97, 103, 104, 111, and 112, must be denied. Larry D. Sall did not sign a form contract with the defendant and therefore is not bound by the form contract's choice-of-law clause. In determining what law applies to the claims of Larry D. Sall, I am governed by Colorado's choice of law principles. *Klax-*

*on Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Colorado has adopted the Restatement (Second) of Conflicts "most significant relationship test" to determine choice of law questions. *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601·P.2d 1369 (1979).

■ Defendant apparently does not dispute that Colorado law applies to Larry D. Sall's claims for relief since there is no argument to the contrary in its brief. Larry D. Sall lives in Colorado, the defendant's employees who controlled his account are in Colorado, and it appears that most of the relevant contact between him and the defendant occurred in Colorado. Colorado law governs his claims for relief, and therefore, the defendant's motion to strike paragraphs 96, 97, 103, 104, 111 and 112 is denied.

■ With respect to the motion to strike paragraphs under the claims asserted on behalf of Stanley and Mary Lynne Sall, these plaintiffs argue that the choice-of-law clause in their contracts is unenforceable because the entire agreement is an adhesion contract and because there is little if any connection between the transactions at issue and the state of Illinois. They base their argument on Restatement (Second) of Conflicts § 187, comment b (1971) which states:

"A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake.... A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print.... Choice-of-law

**1506**

provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent."

No Colorado case has addressed the issue of when a choice-of-law clause should be held unenforceable under these principles. However, the Colorado Supreme Court has defined the term "adhesion contract." In *Jones v. Dressel,* 623 P.2d 370 (Colo.1981), the court stated:

"An adhesion contract is a contract drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere....

[E]ven though a contract is a printed form and offered on a 'take-it-or-leave-it' basis, those facts alone do not cause it to be an adhesion contract. There must be a showing 'that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation, or that [the] services could not be obtained elsewhere.'" *Id.* at 374, quoting *Clinic Masters v. District Court,* 192 Colo. 120, 124, 556 P.2d 473, 475–76 (1976).

Plaintiffs have made no showing that the contract at issue was offered on a "take-it-or-leave-it" basis. Neither have they shown that there was great disparity in bargaining power between the parties, that the defendant's services could not be obtained elsewhere, or that there was no opportunity for negotiation of the choice-of-law clause. Therefore, this contract cannot be classified as one of adhesion.

Furthermore, the plaintiffs have failed to show how application of Illinois law to their claims would result in substantial injustice to them. In fact, they have made no attempt at all to show how, if at all, Illinois law differs from Colorado law on any issue.

For the foregoing reasons, I conclude that the choice-of-law provision in the contracts signed by Stanley Sall and Mary Lynne Sall should be enforced. Therefore, the defendant's motion to strike paragraphs 16, 23, 31, 53, 60, and 68 of the complaint, which expressly refer to and assert claims arising under, the Colorado statute, is granted. The motion to strike paragraphs 15, 22, 30, 52, and 67 is also granted because they allege that the defendant's actions were "attended by circumstances of fraud, malice, insult, or a wanton and reckless disregard for the rights and feelings of" the plaintiffs. Because all Colorado punitive damages claims asserted on behalf of Stanley and Mary Lynne Sall have been stricken, these allegations are immaterial and must also be stricken. Fed.R.Civ.P. 12(f).

**VI. *Motion to Strike Punitive Damages Claims of Larry D. Sall.***

■ Defendant moves to strike paragraphs 96, 97, 103, 104, 111, and 112 on the ground that under Colorado law, claims for breach of fiduciary duty are equitable in nature and punitive damages are not recoverable in equity actions. The motion to strike paragraphs 111 and 112 is denied because these paragraphs are contained in the claim for relief based on inadequate supervision, not breach of fiduciary duty. As to the other paragraphs, the defendant relies on *Kaitz v. District Court,* 650 P.2d 553 (Colo.1982). There, the Colorado Supreme Court held that an action for breach of fiduciary duty brought by a beneficiary of a guardianship against a trustee appointed in a probate proceeding was equitable in nature and that punitive damages are not recoverable in equity. Defendant contends that *Kaitz* stands for the broad proposition that any action for breach of a fiduciary duty is equitable and cannot support a punitive damage award.

*Kaitz* has been limited by the Colorado Court of Appeals in *Holter v. Moore and Co.,* 681 P.2d 962 (Colo.App.1983). There, the plaintiffs sued their agent, a real estate company, alleging that the company had breached its fiduciary duty in connection with the sale of the plaintiffs' house. The appeals court reversed the trial judge's order which had granted partial summary judgment against the plaintiffs' punitive damages claim, and held that an action for breach of a fiduciary duty growing out of a

contract creating a principal-agent relationship is legal, not equitable. The court declared: "While it is true that fiduciary obligations are equitable in nature, ... the remedies of principals against agents who have breached their fiduciary obligations are generally at law." *Id.* at 966.

The relationship between Larry D. Sall and the defendant was clearly one of principal-agent, even though the parties signed no express agreement to that effect. *See Consolidated Oil & Gas Inc. v. Roberts*, 162 Colo. 149, 425 P.2d 282 (1967). Under *Holter*, this is a legal action. Therefore, the defendant's motion to strike paragraphs 96, 97, 103 and 104 is denied.