19CA2264 Belfor v Riley 12-16-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2264 Douglas County District Court No. 18CV30209 Honorable Jeffrey K. Holmes, Judge Belfor USA Group Inc., d/b/a Belfor Property Restoration, a Colorado corporation, Plaintiff-Appellee, v. Anthony Riley and Tausha Riley, Defendants-Appellants. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE DAVIDSON* Román and Welling, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 16, 2021 Hellerstein and Shore, P.C., David A. Shore, Greenwood Village, Colorado, for Plaintiff-Appellee Signature Law Firm, LLC, Tausha Riley, Denver, Colorado, for Defendants-
Appellants *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021. 
1 ¶ 1 This is a breach of contract action that arises from defendants, Anthony and Tausha Riley, failing to pay an amount claimed for services rendered on a contract with plaintiff, Belfor USA Group Inc., a restoration services company. We affirm the judgment and remand. I. Background ¶ 2 In early November 2012, a natural gas explosion at a neighbor’s house damaged the Rileys’ rental home and its contents. On November 5, 2012, the Rileys and Belfor entered into a “Work Authorization” (the contract) according to which Belfor was to provide all services, equipment, labor, and materials to restore the Rileys’ personal property. Pursuant to the contract, Belfor removed the Rileys’ belongings and took them to its facility. There, Belfor identified items that could be salvaged, which then were cleaned, packed away, and stored. ¶ 3 Belfor returned the Rileys’ property to them by the end of December 2012 and sent an invoice seeking payment for the principal amount due, $28,846.65. Apparently, the Rileys had no insurance coverage. Ultimately, the Rileys did not pay, and on February 17, 2018, Belfor filed this action. 
2 ¶ 4 After a bench trial, the court ruled in favor of Belfor on its breach of contract claim and entered a judgment against the Rileys for $28,846.65, the amount owed on the final invoice requesting payment, plus prejudgment interest at the rate of 1.6% per month, costs, and attorney fees. ¶ 5 The Rileys filed this appeal. The primary issue is whether the trial court erred by denying their two motions to dismiss Belfor’s breach of contract claim as barred by the three-year statute of limitations.1 II. Motions to Dismiss ¶ 6 Section 13-80-101, C.R.S. 2021, provides that all contract actions, except as subject to section 13-80-103.5, C.R.S. 2021, shall be commenced within three years of accrual. In turn, section 13-80-103.5(1)(a) provides for a six-year statute of limitations for “[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action.” 1 The complaint also contained a claim for breach of an implied contract and a claim for unjust enrichment, which was dismissed by the trial court. Neither claim is at issue in this appeal. 
3 ¶ 7 Prior to trial, the Rileys moved under C.R.C.P. 12(b)(5) to dismiss Belfor’s claims as barred under the more general three-year statute of limitations applicable to contract actions. The motion was denied by the court in a written order (the June 13, 2018, order). The Rileys renewed the motion after trial, which was again denied by the court in a written order (the July 18, 2019, order). The Rileys challenge both orders on appeal. A. The June 13, 2018, Order ¶ 8 In its June 13, 2018, order, the trial court determined that, based on the face of the complaint, the Rileys had failed to show that Belfor’s claims were brought outside the statute of limitations. The Rileys contend that this was error. We will not, however, address this contention. ¶ 9 In other procedural postures, we review the denial of a defendant’s Rule 12(b)(5) motion to dismiss de novo. However, when the denial of a Rule 12(b)(5) motion, as here, is followed by a trial on the merits in which the defendant has not prevailed, a claim that the denial of a Rule 12(b)(5) motion was error is not reviewable on appeal. Credit Serv. Co. v. Skivington, 2020 COA 60M, ¶¶ 11-12 (“[T]he purpose of a motion to dismiss for failure to state a claim ‘is 
4 to test the formal sufficiency of the complaint’ so as ‘to permit early dismissal of meritless claims,’ and that purpose is no longer achievable if the plaintiff prevails after a full trial on the merits.” (quoting Dorman v. Petrol Aspen, Inc., 914 P.2d 909, 911, 915 (Colo. 1996))). ¶ 10 Thus, because the statute of limitations issue raised in the Rule 12(b)(5) motion was re-raised and litigated in the subsequent bench trial, a claim that the earlier ruling was error is not reviewable on appeal. B. The July 18, 2019, Order ¶ 11 In closing argument following the bench trial, the Rileys renewed their motion to dismiss,2 arguing that, based on the evidence presented at trial, the debt was not liquidated and therefore the six-year statute of limitations did not apply. We disagree with the Rileys. 2 The Rileys’ motion to dismiss based on the statute of limitations raised in closing argument is referred to occasionally by the parties as an affirmative defense. Although the latter appears more procedurally accurate, it matters not because the analysis of the issues raised here are the same under either characterization. 
5 1. The Trial Court’s Order and Standard of Review ¶ 12 In the portion of its order pertaining to the applicable statute of limitations, the court stated: While the work authorization itself does not state the amount the Rileys were obligated to pay, that amount is ascertainable by adding predetermined rates for the services provided. Although [an estimate dated April 22, 2013,] itself was not presented to the Rileys until after the services were performed, it demonstrates that such rates were in place. The stipulation of the parties contained in the trial management order indicates that the Rileys had reviewed the estimate of work to be done. ¶ 13 In a review of a bench trial, an appellate court will review a trial court’s findings of fact for clear error and review the legal conclusions the trial court drew from those findings de novo. Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc., 2019 CO 51, ¶ 18. 2. Liquidated Debt ¶ 14 A “liquidated debt” is a debt that “is ascertainable from the terms of the contract, as where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to dispute.” Rotenberg v. Richards, 899 P.2d 365, 368 (Colo. App. 1995) (quoting Restatement (Second) of 
6 Contracts § 354 cmt. c (Am. L. Inst. 1981)); see also Portercare Adventist Health Sys. v. Lego, 2012 CO 58, ¶ 15 (Portercare II). If the written document sets forth a specific method for determining the amount due, the fact that reference must be made to a fact external to that document does not make a claim under that document unliquidated. Rotenberg, 899 P.2d at 368. ¶ 15 The parties’ contract states, in pertinent part, as follows: All insurance work performed . . . is subject to the terms of the insured policy of Insurance which sets the scope and the price of the work based upon industry standards . . . . [I]f for any reason your claim is denied by your insurance carrier or they refuse to pay the costs of any and/or all insurance work performed by the Contract . . . then the insured/owner(s) . . . will be personally liable for all costs of services performed. (Emphasis added.) ¶ 16 The trial court determined that the amount of the debt was determinable because it could be ascertained by adding predetermined rates for the services provided. We agree. ¶ 17 Specifically, by its terms, the contract implied that the amount due was to be calculated according to a formula used in the insurance industry, which set the scope and price of the work 
7 based on industry standards. All that needed to be done to determine the amount owed — and the Rileys do not dispute this — was to use a computer program that applied each item serviced by Belfor to a set price determined by the industry and utilized nationally. ¶ 18 Nevertheless, relying on Neuromonitoring Associates v. Centura Health Corp., 2012 COA 136, and this court’s decision in Portercare Adventist Health System v. Lego, 312 P.3d 201 (Colo. App. 2010) (Portercare I), the Rileys argued to the trial court (and again in their opening brief on appeal) that, as a matter of law, the trial court’s reliance on extrinsic evidence to determine that the debt was liquidated was improper. However, as the trial court pointed out, the more restrictive definition of “liquidated” in Portercare I was reversed on appeal by our supreme court in Portercare II. And, because Neuromonitoring was decided while Portercare I was pending before the supreme court, its adoption of the more restrictive definition of “liquidated” was necessarily overruled. ¶ 19 Indeed, Portercare II left undisturbed the analysis in Rotenberg, which remains good law. Additionally, the Rotenberg court clearly explained that if the written document (here, the 
8 parties’ contract) sets forth a method for determining the amount due (here, by applying a pre-existing industry standard price schedule to the work performed), the fact that reference must be made to a fact external to that document (here, the industry standard price schedule and the estimated scope of services) does not make a claim under that document unliquidated. See Rotenberg, 899 P.2d at 368; see also Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist., 12 P.3d 1224, 1230 (Colo. App. 2000) (deciding that water district’s obligations under separate agreements to repay developer for costs of constructing water distribution systems were “determinable” where one agreement stated that direct costs could be demonstrated by invoices and verified by the water district’s engineer, and the other agreement specified that “actual costs expended” would be reimbursed); Fishburn v. City of Colorado Springs, 919 P.2d 847, 849-50 (Colo. App. 1995) (holding that claim under an employment contract was “determinable” where, despite a dispute over the number of hours worked by an individual, the amount due was easily calculable); Hayes v. N. Table Mountain Corp., 43 Colo. App. 467, 470, 608 P.2d 830, 832 (1979) (holding that a claim for a broker’s commission 
9 based upon a percentage of the purchase price of realty was a liquidated claim, notwithstanding the fact that evidence from outside the agreement was required to establish the amount of the purchase price); Comfort Homes, Inc. v. Peterson, 37 Colo. App. 516, 519, 549 P.2d 1087, 1090 (1976) (A contract called for payment of a specific percentage of the estimated cost of the construction of a structure. Although the parties disagreed as to the amount of the relevant estimated cost, the claim was held to be one for a “liquidated determinable amount of money due.”); Uhl v. Fox, 31 Colo. App. 13, 14-15, 498 P.2d 1177, 1178 (1972) (considering a written agreement for the sale of corporate stock that established the sales price as the book value of that stock, as reflected in the quarterly financial statement that was to be issued at some date in the future; while it was necessary to establish such book value by extrinsic evidence, a claim for violation of the promise to buy was a liquidated claim). ¶ 20 Furthermore, under Rotenberg, the fact that the Rileys did not have insurance coverage was immaterial to whether the debt was 
10 determinable.3 This is because the reference to the insurance industry standards in the contract was not tied to the terms of a specific insurance policy but merely indicated that the calculations as to the amount owed were based on a set method used nationally in the industry. Whether or not the Rileys had insurance did not change the insurance industry standards, which were fixed and ascertainable. 3. The Stipulation in the Trial Management Order ¶ 21 As set forth above, having found in its July 18, 2019, ruling that the debt was liquidated because the amount owed was determinable, the trial court went on to find that “[t]he stipulation of the parties contained in the trial management order indicates that the Rileys had reviewed the estimate of work to be done.” ¶ 22 The Rileys contend that this finding was erroneous and an abuse of the trial court’s discretion. Specifically, they argue that 3 For purposes of addressing the Rileys’ argument, we accept as fact their assertion that they had no insurance. We note, however, that the trial court neither found to the contrary in its July 18, 2019, order nor relied on their insurance status in its determination that the debt was liquidated. 
11 the debt was not determinable because they never “stipulated” that they had reviewed the estimate prior to the start of work.4 a. Standard of Review ¶ 23 We review the trial court’s pretrial management decisions for an abuse of discretion. That means that the court’s decisions will not be disturbed unless they exceeded its authority or violated the law. See Makeen v. Hailey, 2015 COA 181, ¶ 38; Maloney v. Brassfield, 251 P.3d 1097, 1102 (Colo. App. 2010) (“An abuse of discretion occurs where the trial court’s decision is contrary to law, arbitrary, or capricious.”). b. Analysis ¶ 24 Initially, we note that we are not convinced that in order to resolve the statute of limitations issue it even matters whether the Rileys had in fact received an estimate prior to the start of the work. The only relevant question when deciding whether a six-year or three-year limitations period applies is whether the money damages 4 We will not address the Rileys’ accusations that Belfor’s or its attorneys’ actions were unethical, unprofessional, or illegal because (1) they are raised for the first time on appeal and (2) they are unsupported. 
12 sought constitute a debt that is ascertainable from the terms of the contract or by simple computation using extrinsic evidence if necessary. See Rotenberg, 899 P.2d at 368. That said, the point in time when a defendant becomes aware of the specific price of goods or services may be critical, for example, to prove the contract or its terms, or perhaps to calculate prejudgment interest, but appears tangential to the issue of whether the amount owed is determinable — that is, whether the contract, and any extrinsic evidence, provide a discernable method to apply, as relevant here, a set price to an itemization of units. ¶ 25 As the trial court noted in its order: It is important to recognize that the statute of limitations merely governs whether an action is timely. It does not address the merits of the claim for which relief is being requested. Although in this instance the nature of the debt impacts which statute of limitations is applicable, determining the nature of the debt — deciding whether it is a liquidated debt — does not resolve whether the amounts charged are correct or whether some defense to the obligation claimed is applicable. “The fact that the defendant disputes the amount in question does not affect the liquidated character of the debt.” (citing Portercare II, 2012 CO 58, ¶ 16) 
13 ¶ 26 In any event, assuming without deciding that proof that the Rileys had reviewed the estimate of the work to be done was necessary to determine whether the debt was liquidated, we disagree that, in relying on the pretrial stipulation to provide such proof, the trial court abused its discretion. ¶ 27 Here, the record contains the trial court’s signed and dated trial management order, which includes the stipulation that “defendants reviewed and approved the Estimate for work to be performed with Deon Garcia of Belfor.”5 Nonetheless, the Rileys argue, there was “no stipulation.” This is so, they assert, because 5 The trial management order included four stipulated facts: 1. Defendants executed the Work Authorization on or before November 5, 2012. 2. Defendants reviewed and approved the Estimate for work to be performed with Deon Garcia of Belfor. 3. Plaintiff provided an Invoice and multiple demands for payments to the Defendants. 4. Defendants have not paid Belfor for any of the services, labor or materials used by Belfor in performing and completing the restoration work. 
14 during the trial management conference, the Rileys’ attorney told the court that she “probably” objected because “the statement of facts that are there is what I would disagree with.”6 But she offered no further explanation or specifics to the court, although she was given the opportunity to do so. As Belfor points out, she did not submit anything prior to the conference, and she offered no alternative or more specific language to the court during the conference. ¶ 28 Under these circumstances, we agree with Belfor that it was within the wide parameters of the trial court’s discretion to approve the proposed pretrial order, including the stipulated fact, and, consequently, to rely on it in its July 18, 2019, order. See, e.g., Awanderlust Travel, Inc. v. Kochevar, 21 P.3d 876, 878 (Colo. App. 2001) (“When no objection is made to a pre-trial order, the matters determined by the order have the force and effect of a stipulation among the parties.”). 6 Counsel had not signed the proposed pretrial order, explaining that “she didn’t have time.” 
15 ¶ 29 This is particularly so here, not only because the Rileys’ counsel gave the court nothing to work with at the conference, but also because the Rileys made no subsequent request to the trial court to relieve them from the stipulated facts, despite the record reflecting that they had ample opportunity to do so. See Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co., 698 P.2d 1340, 1346 (Colo. 1985) (trial court has discretion to relieve a party of a stipulation upon timely application); Maloney, 251 P.3d at 1108 (whether to relieve a party of a stipulation is within the discretion of the trial court); see also Sandoval v. Daniels, 532 P.2d 759, 762 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)) (“The record does not contain any objection by plaintiffs’ counsel to the pre-trial order and, therefore, the pre-trial order has the force and effect of a stipulation of the parties.”). ¶ 30 Furthermore, this was a bench trial, and the Rileys’ suggestion to the contrary notwithstanding, the court was free to disregard testimony that may have conflicted with the stipulated facts set 
16 forth in the trial management order.7 See, e.g., Liggett v. People, 135 P.3d 725, 733 (Colo. 2006) (In the context of a bench trial, the prejudicial effect of improperly admitted evidence is generally presumed innocuous. “[T]here is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence.” (quoting People v. Kriho, 996 P.2d 158, 172 (Colo. App. 1999))); see also Deas v. Cronin, 190 Colo. 177, 179, 544 P.2d 991, 993 (1976) (“The credibility of the witnesses . . . [and] the inferences and conclusions to be drawn [from the evidence] are all within the province of the trial court,” and its findings will not be disturbed on appeal unless they “are manifestly erroneous.”). ¶ 31 Under these circumstances, we conclude that the court’s reliance on the stipulation was not an abuse of discretion. 7 In its order, referring to the conflicting testimony as to when the Rileys saw an estimate of the work to be done, the court stated that it “does not have to resolve this disagreement because the trial management order, approved by the court, contained as one of the parties’ stipulated facts that, ‘Defendants reviewed and approved the estimate for work to be performed with Deon Garcia of Belfor.’” 
17 III. The Trial Court Award of Attorney Fees ¶ 32 As relevant here, Belfor did not submit its affidavit in support of its attorney fees to the Rileys until late in the day before the scheduled hearing. At the hearing, the Rileys objected, complaining that they did not have adequate time to review the documents and asking the court to “not allow” an award of fees. As a remedy, the court granted a recess to provide additional time for review. ¶ 33 On appeal, the Rileys claim that the attorney fees award to Belfor was unreasonable and unfair because “opposing counsel failed to file its affidavit for attorney fees in a timely manner,” and specifically, that the trial court abused its discretion when it permitted Belfor to introduce its supporting documentation less than a full day before the hearing. As a remedy, they do not seek a new hearing, but instead ask us to vacate the award. We find no abuse of discretion and decline the Rileys’ request. A. Standard of Review and Law ¶ 34 We review the reasonableness of a trial court’s award of attorney fees for an abuse of discretion. Payan v. Nash Finch Co., 2012 COA 135M, ¶ 16. The determination of reasonableness of attorney fees is a question of fact for the trial court, and we will not 
18 disturb its ruling unless it is patently erroneous and unsupported by the evidence. Id. ¶ 35 To determine reasonable attorney fees, a trial court first calculates the “lodestar amount,” which represents “the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate.” Id. at ¶ 18. The court may then adjust the lodestar amount up or down based on several factors. See Dubray v. Intertribal Bison Coop., 192 P.3d 604, 608 (Colo. App. 2008). In awarding attorney fees, the trial court may consider, among other factors, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, and the usage in the legal community concerning fees in similar cases. See In re Estate of Painter, 39 Colo. App. 506, 508, 567 P.2d 820, 822 (1977); Bryant v. Hand, 158 Colo. 56, 59-60, 404P.2d 521, 522-23 (1965). A trial court’s calculation of the lodestar amount enjoys a “strong presumption of reasonableness.” Payan, ¶ 18. B. The Court’s Attorney Fees Order ¶ 36 With record support, the trial court found that the total amount of hours expended on the case was 73.17, of which 59.4 
19 was attributable to lead counsel, five hours to associate counsel, and 8.77 to a paralegal. The court then noted the hourly rates charged, respectively, $300, $230 and $175. The court made findings on the reasonableness of the hourly rates and considered, among other factors, the eight factors set forth in Rule 1.5 of the Colorado Rules of Professional Conduct.8 ¶ 37 The court noted that the case itself was not difficult but required more time because of “a variety of factors that the history of the case discloses.” Ultimately, with specific findings, the court reduced the number of hours expended by 15% for the two attorneys, and 10% for the paralegal. The court explained that its award was 8 The factors set forth in Colo. RPC 1.5(a) are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fees customarily charged for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. 
20 derived from the total attorneys’ fees and costs set forth in the affidavit submitted by [Belfor’s] counsel minus charges the Court has determined should not be awarded as well as a reduction in the total number of hours charged by [Belfor’s] counsel in bringing this action. The Court has reduced the amount [of] attorneys’ fees and in making this decision, analyzed some of the unusual aspects of the action, the length of the litigation and the lack of complexity of legal issues in this action. See Catlin v. Tormey Bewley Corp., 219 P.3d 407, 410-11 (Colo. App. 2009) (“The district court has considerable discretion in determining the size of a fee award, as is appropriate given the district court’s superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.” (quoting Dalal v. Alliant Techsystems, Inc., 182 F.3d 757, 760 (10th Cir. 1999))). C. Analysis: No Abuse of Discretion ¶ 38 On appeal, the Rileys raise no specific challenge to the propriety of the fees award, but argue, instead, that by allowing Belfor to present its evidence in support of its fees, the court abused its discretion. Although the Rileys do not cite to any specific authority, we understand them to argue that the trial court should have used its discretion to sanction Belfor by refusing to 
21 allow it to submit its evidence and, thus, to effectively bar it from an award of fees. As to that contention, we disagree. ¶ 39 First, providing more time to review the evidence in lieu of precluding it was a valid choice. It is well within the trial court’s discretion to determine appropriate remedies and sanctions for failure to comply with procedural rules, including the admission of evidence. Genova v. Longs Peak Emergency Physicians, P.C., 72 P.3d 454, 466 (Colo. App. 2003) (When a party violates the discovery rules, trial courts are permitted “to choose appropriate sanctions, which may include evidence preclusion. However, that sanction is not mandatory.”); see also Trattler v. Citron, 182 P.3d 674, 682 (Colo. 2008) (“[I]t is unreasonable to deny a party an opportunity to present relevant evidence based on a draconian application of pretrial rules.” (quoting J.P. v. Dist. Ct., 873 P.2d 745, 750 (Colo. 1994))). ¶ 40 Furthermore, the record shows that the recess provided the Rileys with sufficient opportunity to review the evidence. The Rileys were able to raise numerous challenges to the proffered calculations; their counsel proceeded through the affidavit, line by line, pointing out, with supporting argument, nearly fifty 
22 objectionable items in the amount of time billed by Belfor’s attorneys. Moreover, the trial court’s order shows that it accepted most of the Rileys’ concerns.9 Cf. Todd v. Bear Valley Vill. Apartments, 980 P.2d 973, 979 (Colo. 1999) (“In evaluating whether a failure to disclose evidence is harmless under [C.R.C.P.] 37(c), the inquiry is not whether the new evidence is potentially harmful to the opposing side’s case. Instead, the question is whether the failure to disclose the evidence in a timely fashion will prejudice the 9 In pertinent part the order stated: The Court finds that it is appropriate to make deductions from the hours expended, considering lack of complexity of the issues involved, and has been noted by Ms. Riley. I think there are a number of activities which unduly reflect the amounts of time involved for them — for the particular ones. It may indeed be, although it’s mainly Counsel’s representation, the Court has not been provided with a fee agreement, that there may be an understanding with the client of a minimum amount of time that is to be charged. But the Court does not necessarily believe that that is determinative in deciding what is reasonable and necessary in terms of the fees to be awarded and the liability to be assumed by another party. 
23 opposing party by denying that party an adequate opportunity to defend against the evidence.”). ¶ 41 Most important, the Rileys made no showing of further prejudice after the recess — they did not request a continuance or more time to obtain an expert of their own, nor did they make an offer of proof as to what more they could have done or shown had the evidence been submitted earlier. See, e.g., Ajay Sports, Inc. v. Casazza, 1 P.3d 267, 275 (Colo. App. 2000) (concluding that any error in permitting undisclosed expert testimony was harmless where party claiming surprise by the testimony did not specify how he was prejudiced or what additional information he could have elicited on cross-examination); see also Winkler v. Shaffer, 2015 COA 63, ¶ 7; Saturn Sys., Inc. v. Militare, 252 P.3d 516, 525 (Colo. App. 2011). ¶ 42 Based on this record, we conclude that the trial court’s remedy for Belfor’s late submission of its affidavit in support of fees was not an abuse of discretion. Consequently, we decline the Rileys’ related request that we vacate, in its entirely, the attorney fees award. 
24 IV. Appellate Attorney Fees and Costs ¶ 43 Belfor requests an award of appellate attorney fees and costs. As noted above, Belfor has a contractual right to recover reasonable attorney fees and costs, and, therefore, it is entitled to its reasonable attorney fees and costs incurred in defending this appeal. Because the trial court is better situated to resolve the factual issues associated with the entitlement to attorney fees, we exercise our discretion under C.A.R. 39.1 and remand for the trial court to determine and award Belfor appellate attorney fees. See In re Marriage of Beatty, 2012 COA 71, ¶ 22. V. Conclusion ¶ 44 Based on our disposition, we do not address any remaining arguments raised by the parties. ¶ 45 For the reasons set forth above, the judgment is affirmed. The case is remanded to the trial court for an award to Belfor of its reasonable attorney fees and costs incurred in this appeal. JUDGE ROMÁN and JUDGE WELLING concur.